STATE OF NORTH CAROLINA v. THOMAS G. HART

No. 8312SC139

(Filed 21 February 1984)

1. **Narcotics § 3.1— uses of quinine and manitol—testimony by police officer**

A police officer was properly permitted to testify that quinine and manitol found in a search of defendant's home had uses in the illicit heroin trade where the testimony was based on the personal knowledge of the officer acquired while serving as assistant director of the city-county bureau of narcotics.

2. **Criminal Law § 42.6— articles seized from defendant—chain of custody**

Proof of a complete chain of custody with no missing links was not a prerequisite to the admissibility of drugs and other articles seized by the police where the articles were identified as being the same objects seized and in somewhat the same condition. Furthermore, the State's evidence with respect to the chain of custody and whereabouts of the seized articles was not incomplete because there was no testimony as to how custody of the articles was maintained between the time the district attorney received the articles at the beginning of the trial until they were admitted into evidence the next day.

3. **Constitutional Law § 74— right against self-incrimination—no waiver by written statement before trial**

A witness who was awaiting a separate trial for possessing heroin did not waive his right to refuse to answer incriminating questions in defendant's trial for possession of heroin when he gave defendant a written statement before trial that defendant had nothing to do with the heroin. Fifth Amendment to the U.S. Constitution.

APPEAL by defendant from *Britt, Samuel E., Judge.* Judgment entered 9 September 1982 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 19 October 1983.

Defendant was convicted of possession with intent to sell and deliver heroin, a felony, and sentenced to eight years in prison. The State's evidence tended to show that: Narcotics officers, armed with a search warrant, went to defendant's residence where defendant and Lawrence Smith were and found several packets of heroin in a bag behind the refrigerator, some quinine and manitol elsewhere in the apartment, and some marijuana on Smith, who was also indicted. Defendant testified that the heroin did not belong to him and in support thereof presented Smith's written statement that the heroin was not defendant's, and the corroborating testimony of defendant's first attorney, who obtained the statement from Smith. Defendant also called Smith to the stand; but except for admitting that he signed and swore to the statement, he refused to answer various questions relating to the drugs, pleading his Constitutional rights against self incrimination, which the court upheld.

Other facts necessary for the disposition of the appeal are discussed in the opinion.

*Attorney General Edmisten, by Assistant Attorney General David Roy Blackwell, for the State.*

*Charles H. Kirkman for defendant appellant.*

PHILLIPS, Judge.

Defendant presents fifteen assignments of error for our consideration. None have merit, in our opinion, and only three of them require brief discussion.

[1] The assignment most strongly argued by defendant is based on the court permitting a police officer who had not been found by the court to be an expert to testify over objection that quinine and manitol, found in the search of defendant's home, had uses in the illicit heroin trade. But the record reveals that the testimony was based on the personal knowledge of the officer, acquired while serving as Assistant Director of the City-County Bureau of Narcotics, during the course of which he had had many occasions to learn about the uses of these substances by illegal narcotics traders; and, of course, there is no better basis for testimony of any kind than personal knowledge. Similar testimony was approved in *State v. Covington*, 22 N.C. App. 250, 206 S.E. 2d 361 (1974).

[2]· Another of defendant's assignments of error is based upon the drugs and other articles taken from the defendant's residence being received into evidence. The contention is that the exhibits were inadmissible because the State's evidence did not establish the whereabouts and custody of the articles during the entire period from the time they were seized until they were received into evidence. But proving a complete chain of custody with no missing links is not always a prerequisite to the admissibility of articles seized by the police. *State v. Silhan,* 302 N.C. 223, 275 S.E. 2d 450 (1981). Where the articles objected to have been identified as being the same objects seized and in somewhat the same condition, as happened here, proving a continuous chain of custody is unnecessary. *State v. Oliver,* 302 N.C. 28, 274 S.E. 2d 183 (1981). Furthermore, the State's chain of evidence with respect to the custody and whereabouts of the seized articles was not incomplete. It traced the whereabouts and custody of the articles, step by step, from the time they were seized until they were delivered to the District Attorney upon the trial beginning, and the only period that defendant contends was not covered by testimony was the period between when the District Attorney received the articles at the beginning of the trial until they were received into evidence the next day. Under the circumstances, there being no claim or suggestion that the seized articles had been altered or replaced, testimony as to how custody of the articles was maintained by the District Attorney's office and by whom could not have benefited defendant and would have been a pointless waste of time. In this instance, therefore, because of the circumstances that existed, we believe that the chain of custody was completed when delivery was made to the District Attorney at the beginning of trial.

[3] Defendant also contends that the trial court erred in not requiring Smith to answer various questions that defendant put to him, notwithstanding Smith's claim that answering the questions involved would tend to incriminate him. But Smith was not a witness for the State, nor was he a co-defendant voluntarily testifying to defendant's detriment in the same trial; Smith, though also indicted for possessing heroin and awaiting a separate trial later, was subpoenaed and put on the stand by defendant. Thus, the danger of Smith incriminating himself and his Fifth Amendment privilege against being required to do so were beyond

question. The only question was whether Smith had waived the protection that the Constitution gave him by signing the written statement shortly after defendant was arrested; the statement was about the heroin that defendant was also charged with possessing and was to the effect that defendant had nothing to do with it and did not even know that it was there. The rule in this state and most others, however, is that a witness who testifies to incriminating matters in one proceeding does not thereby waive the right to refuse to answer questions concerning such matters at a subsequent hearing or trial. *State v. Pearsall*, 38 N.C. App. 600, 248 S.E. 2d 436 (1978). *A fortiori*, Smith's written statement to the defendant before trial was not a waiver of his right to refuse to answer incriminating questions in the trial. But the defendant does not appear to have been prejudiced by this ruling in any event. In testifying, Smith neither contradicted nor repudiated his written statement, but admitted that he signed and swore to it as the truth, and the statement was read into evidence. The statement, prepared by defendant's lawyer, was direct, unequivocal, and completely favorable to the defendant. That Smith could or would have said it as well from the witness stand is doubtful; but he could easily have said it worse.

The defendant's several other assignments of error are of even less weight and substance, and discussing them would serve no purpose.

No error.

Judges WEBB and EAGLES concur.