STATE OF NORTH CAROLINA v. LEO HINSON

No. 863SC1001

(Filed 5 May 1987)

1. **Assault and Battery § 11.1— assault with deadly weapon—two and one-half ton truck as deadly weapon—sufficiency of indictment**

    Indictments were sufficient to charge defendant with assault with a deadly weapon where they named a two and one-half ton truck as the weapon used by defendant in committing the assault and expressly alleged that the truck was a deadly weapon.

2. **Weapons and Firearms § 2— possession of firearm by convicted felon—defendant not on own premises**

    In a prosecution of defendant for possession of a firearm by a convicted felon, defendant did not come within the exception of N.C.G.S. § 14-415.2(a) allowing possession of a firearm in one's own home or place of business where the evidence tended to show that his truck was in a neighbor's yard; he was "kind of at the back" of the truck when he fired the gun; and spent shells were found in the neighbor's yard.

3. **Assault and Battery § 14.3— assault with deadly weapon with intent to kill—two and one-half ton truck as deadly weapon—sufficiency of evidence**

    Evidence was sufficient to show that defendant used a two and one-half ton truck as a deadly weapon and that he possessed the specific intent to kill each of five deputies where the evidence tended to show that, as defendant drove the truck toward the road where the deputies were located, he was waving one arm out the window and was screaming, "Stand right there, you son of a bitches. I'll kill you," and he drove the truck straight at the deputies before colliding with two automobiles and running into a ditch; furthermore there was no merit to defendant's contention that, because of his intoxication and mental and emotional state, there was insufficient evidence that he "willfully and wantonly" ran into the automobiles with the truck.

4. **Criminal Law § 112.6— no evidence of insanity—refusal to instruct proper**

    The trial court did not err in denying defendant's request that the jury be instructed on temporary insanity where defendant offered no expert testimony tending to show that he was suffering from a mental disease or defect at the

time of the events giving rise to the charges; his evidence merely tended to show voluntary intoxication as a result of alcohol and drug abuse; and the court correctly instructed that defendant's intoxication could be considered in determining whether defendant had the ability to form the specific intent to kill necessary for conviction of assault with a deadly weapon with intent to kill.

**5. Criminal Law § 112.6— assault with deadly weapon—shots fired at defendant during assault—defendant's responsibility for actions—instructions proper**

In a prosecution of defendant for assault with a deadly weapon with intent to kill, the trial court did not err in refusing to instruct the jury that defendant would not be responsible if his operation of the truck "was affected by the firing of weapons at him" where there was no suggestion in the record that defendant was not in complete control of the truck at the time the alleged assaults and property damage took place.

APPEAL by defendant from *Stephens, Judge.* Judgment entered 23 November 1985 in Superior Court, PITT County. Heard in the Court of Appeals 12 February 1987.

A Pitt County grand jury returned true bills of indictment charging defendant Leo Hinson with assault with a deadly weapon with intent to kill inflicting serious injury, possession of a handgun by a convicted felon, two counts of willful and wanton injury to personal property causing damage in excess of $200.00, two counts of assault upon a law enforcement officer in violation of G.S. 14-33(b)(4), and five counts of assault with a deadly weapon with intent to kill. Upon defendant's pleas of not guilty, all of the charges were joined for trial.

The State's evidence at trial tended to show that on 24 June 1985 at approximately 2:00 p.m., defendant, his wife and their three children entered the yard of Grace Whitfield, defendant's aunt, in a pickup truck driven by defendant's wife. Mrs. Whitfield's property is located adjacent to, and west of, defendant's property which is situated on the north side of rural paved road 1200 near Farmville, North Carolina. After getting out of the truck, defendant began arguing with his wife about the keys to the vehicle. When she refused to give them to him, defendant grabbed Randy Whitfield, Grace Whitfield's sixteen-year-old son, by the front of his shirt. Randy broke free from defendant's grip, ran through his mother's house and hid in a cornfield in the backyard. From his position in the cornfield, he could hear gunshots and defendant yelling.

State v. Hinson

James Walston, who worked for defendant, saw defendant and his family enter Mrs. Whitfield's yard. He heard the Hinsons arguing about the keys to the truck and began walking toward defendant, who was obviously drunk, in order to keep him from driving. Walston saw defendant fire a pistol into the air, then unload it and throw it on the ground at Mrs. Whitfield's feet. Both Walston and Randy Whitfield testified that defendant was acting like he was "not in his right mind" or was "crazy drunk."

At approximately 3:00 p.m., Pitt County sheriff's deputies Ivan Harris and Neal Elks were dispatched to Mrs. Whitfield's home to investigate a report that a man was drunk and was firing a gun. As they drove up the Whitfield driveway, the deputies, wearing plain clothes and operating an unmarked patrol car, observed defendant standing behind a tree. Defendant was holding a board measuring one by four inches by approximately five feet long in his right hand; his left hand was clenched in a fist. Defendant approached the officers' car, cursing them and ordering them off the property. He reached through the open window, grabbed Deputy Elks by his necktie and tried to pull him out of the car. At about the same time, defendant began to hit the windshield of the car with the board, and continued to do so until the board broke. Deputy Elks drew his weapon and pointed it toward defendant as he struggled to free himself. Deputy Harris began to back the patrol car out of the driveway and defendant released Deputy Elks. Deputy Harris parked the car a short distance from the driveway on the north side of rural paved road 1200 and the officers radioed for assistance.

A short while later, uniformed deputy sheriffs Rick Fisher and Allen Edwards arrived in an unmarked patrol car and parked behind Deputy Harris' vehicle. Deputy Harvey Gardner also arrived and parked his unmarked patrol car in front of Deputy Harris' vehicle. The deputies were out of their vehicles and were awaiting a radio message concerning a warrant for defendant's arrest when a green car, driven by Mrs. Whitfield, stopped alongside Deputy Gardner's patrol car.

About that same time, the deputies heard the sound of an engine starting and saw defendant driving a white two and one-half ton truck toward them on a path leading to the road from an area where some bulk tobacco barns were located. The deputies

warned Mrs. Whitfield to move her car out of the way of the truck, so she moved it just off the northern shoulder of the road in front of Deputy Gardner's car.

As defendant approached the road, he was waving his left arm out the window of the truck and was screaming, "Stand right there, you son of a bitches. I'll kill you." The defendant made a left turn onto the roadway, then turned even more sharply left toward the deputies and Mrs. Whitfield, driving the truck into Mrs. Whitfield's car and then into Deputy Gardner's patrol car. Four of the deputies drew their weapons and opened fire as they ran from out of the path of the defendant's truck. The defendant then turned the truck back toward the right, dragging the Whitfield car, and ran into a ditch off the southern shoulder of the roadway. The defendant was found lying on the front seat of the truck, wounded and still screaming.

At the close of the State's evidence, the trial court dismissed the count which charged defendant with misdemeanor assault upon Deputy Harris. Defendant's motion to dismiss the remaining charges was denied.

Defendant offered evidence tending to show that he had taken prescription painkillers for kidney stones and had consumed a fifth of liquor during the morning and afternoon preceding these events. Taking the stand in his own behalf, defendant stated that after arguing with his wife about the keys to the truck, he got an automatic pistol out of the bolt bin in his workshop. He testified that, because he was drunk, he got a "little loud" and that when Mrs. Whitfield came out of her house, she saw the gun and told him to give it to her. Defendant stated that he couldn't get the gun unloaded so, while on his own property, he fired the gun into the air to empty it and then threw it, unloaded, on the ground at her feet. Defendant further testified that when he went back into his shop, everything started turning "around and upside down" and that he doesn't remember anything else until waking up in the emergency room of the Pitt County Memorial Hospital.

Defendant's motions to dismiss, renewed at the close of all the evidence, were denied. The jury returned verdicts convicting defendant of misdemeanor assault upon Deputy Elks while in the performance of his duties as a law enforcement officer, willful and

wanton injury to Mrs. Whitfield's automobile causing damage of more than $200.00, willful and wanton injury to the Pitt County patrol car driven by Deputy Gardner causing damage in excess of $200.00, possession of a firearm by a convicted felon, and five counts of felonious assault with a deadly weapon with intent to kill. He was acquitted of feloniously assaulting Mrs. Whitfield. Judgments were entered upon the verdicts sentencing defendant to active terms of imprisonment. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Laura E. Crumpler, for the State.*

*Hulse & Hulse, by Herbert B. Hulse, and Braswell & Taylor, by Roland C. Braswell, for defendant.*

MARTIN, Judge.

By his exceptions and assignments of error brought forward on appeal, defendant challenges the sufficiency of the bills of indictment in those cases in which he was charged with assault with a deadly weapon with intent to kill, the sufficiency of the evidence to support his convictions, and the denial of his requests for certain instructions to the jury. We have considered his contentions and find no error in his trial.

[1]  In cases 85CRS13969, 85CRS13970, 85CRS13971, 85CRS13972 and 85CRS13973, each of the bills of indictment included the following language:

> . . . the defendant named above unlawfully, willfully and feloniously did assault [named victim], . . . with a 2½ ton truck, a deadly weapon. The assault was committed with the intent to kill.

Defendant moved to dismiss each of the indictments insofar as it purported to charge a felony on the grounds that the language was insufficient to allege the use of a deadly weapon. His first assignment of error is directed to the denial of the motions.

Defendant bases his argument upon the failure of the bills of indictment to allege the operation of the truck in any manner which would render it a "deadly weapon" within the meaning of G.S. 14-32(c). He asserts that, in order to properly allege the use of a motor vehicle as a deadly weapon, the indictment "must

allege the acts which constitute unlawful operation of the motor vehicle and must further allege injury to some person as the result of the unlawful operation." We disagree.

The requirements for an indictment charging the offense of assault with a deadly weapon were fully discussed and set out by our Supreme Court in *State v. Palmer*, 293 N.C. 633, 639-40, 239 S.E. 2d 406, 410-411 (1977).

> Specifically, with regard to an indictment or warrant charging the offense of assault with a deadly weapon, we said in *State v. Wiggs, supra*, 269 N.C. at 513, 153 S.E. 2d at 89:

> "The requisites of an indictment or warrant charging the criminal offense of assault with a deadly weapon are set forth in 6 C.J.S., Assault and Battery § 110g(2), as follows: 'In an indictment for an assault with a deadly or dangerous weapon, the dangerous or deadly character of the weapon must be averred, either in the language of the statute, or by a statement of facts from which the court can see that it necessarily was such. It is only necessary, however, to describe and charge the weapon to be deadly or dangerous where it is a weapon the ordinary name of which does not, *ex vi termini*, import its deadly or dangerous character; if it is a weapon the ordinary name of which imports its deadly or dangerous character, *ex vi termini*, it is sufficient to describe it by its name, without alleging that it was a deadly or dangerous weapon.' "

> Guided by the foregoing principles, we hold that it is sufficient for indictments or warrants seeking to charge a crime in which one of the elements is the use of a deadly weapon (1) to name the weapon and (2) either to state expressly that the weapon used was a "deadly weapon" or to allege such facts as would *necessarily* demonstrate the deadly character of the weapon. Whether the state can prove the allegation is, of course, a question of evidence which cannot be determined until trial. (Emphasis original.)

In *Palmer*, the Supreme Court held that an indictment which alleged that the defendant assaulted the victim "with a stick, a deadly weapon, by beating him about the body and head" was sufficient to allege the use of a deadly weapon.

Each of the indictments challenged by defendant names the two and one-half ton truck as the weapon used by defendant in committing the assault and expressly alleges that it was a "deadly weapon." The indictments were, therefore, sufficient to support the verdicts of guilty of felonious assault with a deadly weapon and the judgments based thereon.

By his second, third and fourth assignments of error, defendant challenges the sufficiency of the evidence to support his convictions of possession of a firearm by a convicted felon, felonious assault with a deadly weapon with intent to kill, and willful and wanton injury to personal property. He asserts error in the denial of his motions, made at the close of all the evidence, to dismiss each of those charges.

A motion for dismissal of criminal charges requires the trial court to determine whether there is substantial evidence of each essential element of the crime charged, or of a lesser included offense, and that the defendant is the person who committed the offense. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984). In ruling on the motion, the court must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference which may be drawn from the evidence and resolving all inconsistencies in the State's favor. *Id.* The defendant's evidence, unless favorable to the State, is not to be considered. *Id.*

[2] Defendant's second assignment of error is directed to the denial of his motion to dismiss the charge of possession of a firearm by a convicted felon. His argument is based upon the third paragraph of G.S. 14-415.1(a), which creates an exception to the offense defined by the subsection. The exception provides: "Nothing in this subsection would prohibit the right of any person to have possession of a firearm within his own home or on his lawful place of business." Defendant contends that he brought himself within the exception by testifying that he was on his own property, which adjoins the Whitfield property, when he fired the pistol, and that the State failed to offer substantial evidence that he possessed the firearm while off his own premises. *See State v. McNeill*, 78 N.C. App. 514, 337 S.E. 2d 172 (1985), *disc. rev. denied*, 316 N.C. 383, 342 S.E. 2d 904 (1986). We reject his argument.

According to the State's evidence, Randy Whitfield saw defendant arrive at the Whitfield residence in a pickup truck which "turned into my yard" and that the truck "stopped in the yard." James Walston testified that when he saw defendant with the pistol, defendant was standing "kind of at the back of his truck." The pistol appeared to Walston to be a .25 caliber pistol. After defendant threw the pistol on the ground, Mrs. Whitfield took it into her house. An S.B.I. agent testified that a .25 caliber pistol was found in the Whitfield residence after the incident and that spent .25 caliber rounds were found in the Whitfield's yard.

Viewed in the light most favorable to the State, the evidence that defendant's truck was in the Whitfield yard, that he was "kind of at the back" of the truck when he fired and that spent shells were found in the Whitfield's yard is sufficient to support a reasonable inference that defendant was on the Whitfield property at the time he fired the pistol. This assignment of error is overruled.

[3] By his third assignment of error, defendant contends that each of the five charges of assault with a deadly weapon with intent to kill should have been dismissed. He argues that the State's evidence was insufficient to show that defendant used the two and one-half ton truck as a deadly weapon or that defendant possessed the specific intent to kill each of the five deputies who were named as victims in the five bills of indictment. We disagree.

The State's evidence tended to show that as defendant drove the truck toward the road where the deputies were located, he was waving one arm out the window and was screaming "Stand right there, you son of a bitches. I'll kill you." He drove the truck straight at the deputies before colliding with the two automobiles and running into the ditch. Viewed in the light most favorable to the State, the evidence raises reasonable inferences sufficient to take to the jury the issues of defendant's use of the truck as a deadly weapon and whether he acted with the requisite specific intent to kill the deputies.

For similar reasons, we overrule defendant's fourth assignment of error in which he contends that, because of his intoxication and his mental and emotional state, there was insufficient evidence that he "willfully and wantonly" ran into the two auto-

mobiles with the truck. The words "willful" and "wanton," when identifying the requisite state of mind for violation of a criminal statute, mean "the wrongful doing of an act without justification or excuse, or purposely and deliberately in violation of the law." *State v. Murchinson*, 39 N.C. App. 163, 170, 249 S.E. 2d 871, 876 (1978). We hold that the evidence which we have previously recited is sufficient, when tested by the standards applicable to motions for dismissal, for submission to the jury on the issue of whether defendant acted "willfully and wantonly" in damaging the two automobiles.

[4] Defendant's next assignment of error is directed to the denial of his oral request "that the jury be instructed on temporary insanity." We find no error in the court's ruling with respect to the request. Defendant offered no expert testimony tending to show that he was suffering from a mental disease or defect at the time of the events giving rise to the charges; his evidence merely tended to show voluntary intoxication as a result of alcohol and drug use. The trial court correctly instructed the jury that defendant's intoxication could be considered in determining whether defendant had the ability to form the specific intent to kill necessary for conviction of assault with a deadly weapon with intent to kill. This assignment of error is overruled.

[5] Finally, defendant contends that the trial court erred in denying his oral request that the jury be instructed that defendant would not be responsible if his operation of the truck "was affected by the firing of weapons at him. . . ." Again, we find no evidence to support such an instruction. There is no suggestion in the record that defendant was not in complete control of the truck at the time the alleged assaults and property damage took place. To the contrary, there was testimony tending to show that no shots were fired at defendant until after he had driven toward the officers and had struck Mrs. Whitfield's car and the patrol car. Even after shots were fired at defendant. Deputy Elks testified that defendant "was looking at me in the face and steering the truck in my direction" before running into the ditch. Defendant's evidence tended only to show that he could not remember the events. Absent any evidence to support the requested instruction, the trial court properly refused to give it. It would have been error for the court to instruct upon hypothetical facts not

supported by the evidence. *State v. Ferdinando*, 298 N.C. 737, 260 S.E. 2d 423 (1979).

No error.

Judges PARKER and COZORT concur.