STATE OF NORTH CAROLINA
v.
ELGIN ORLANDAS HART.
No. COA05-1488-2
Court of Appeals of North Carolina.
Filed March 3, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Lisa H. Graham, for the State.
Michelle Formy Duval Lynch, for defendant-appellant.
CALABRIA, Judge.
This case comes to us on remand from the North Carolina Supreme Court. We hold that defendant's violation of Rule 10(c)(1) of the North Carolina Rules of Appellate Procedure was not gross or substantial and decline to impose sanctions under Rule 25(b) or Rule 34. Accordingly, we address the merits of appellant's argument and hold that the trial court did not abuse its discretion in admitting the officer's testimony.

I. Facts
The pertinent facts are summarized in State v. Hart, 179 N.C. App. 30, 34, 633 S.E.2d 102, 105 (2006), and restated as follows: The Kinston Police Department ("Kinston P.D.") became involved with defendant when it served a search warrant at 309 Stoughs Alley Lane, Kinston, North Carolina. At the time officers served the warrant, four men, including defendant, were present inside the premises. The search warrant named only defendant and Dontrieves Hooker ("Hooker"), and Kinston P.D. permitted the two remaining men to leave after no drugs were found on them. Officer Ken Barnes ("Barnes") testified that upon entering the premises he observed: 1) the first room officers entered from the front door was empty; 2) the second room contained a couch, dresser, and a television; 3) the third room contained a couch, a desk, and a potbelly stove; and 4) a hallway contained stacked wood. Barnes further testified that the windows were covered with clear plastic and the premises contained no beds, no refrigerator, no store bought food other than some leftovers found in the trash, and no toiletries except deodorant.
A search of the apartment revealed crack cocaine, marijuana, scales, razor blades, aluminum foil, small red baggies, and a razor blade with cardboard around the base of it, which Barnes characterized as a crack pipe. Kinston P.D. also searched both defendant and Hooker. Defendant had no drugs on his person; however, police officers found $2,609.00 in currency on him. Hooker had $200.00 in currency on him. During the investigation, Barnes also recovered January 2003 utility bills, and in a dresser drawer, he found a rent receipt for the residence addressed to defendant. Barnes also recovered rent receipts from February and March 2003, which were addressed to Hooker.
On 24 September 2003, defendant was indicted for possession with intent to sell and deliver cocaine, keeping and maintaining a dwelling for the use of cocaine, possession of marijuana, and attaining the status of an habitual felon. During the trial, Officer Keith Goyette ("Officer Goyette") of the Kinston Police Department testified on direct examination by the State, over defendant's objection, that a razor blade with cardboard around it which was found at defendant's residence was a "crack pipe."
On 13 May 2005, a jury returned a verdict finding defendant guilty of all three offenses. Defendant then pled guilty to attaining the status of an habitual felon. The trial court sentenced him to a minimum of 151 months and a maximum of 191 months in the custody of the North Carolina Department of Correction. Defendant appealed the judgment. This Court dismissed one of several assignments of error ("assignment of error number four") because it violated N.C.R. App. P. 10(c)(1) (2006). See Hart, 179 N.C. App. at 37, 633 S.E.2d at 107. Assignment of error number four related to the admissibility of Officer Goyette's testimony. Id.
In an order filed 4 May 2007, our Supreme Court affirmed this Court's opinion with the exception of the portion dismissing assignment of error number four. State v. Hart, 361 N.C. 309, 317, 644 S.E.2d 201, 206 (2007). While agreeing that assignment of error number four violated N.C.R. App. P. 10(c)(1), the Supreme Court remanded for consideration of whether to exercise this Court's discretion under N.C.R. App. P. 2 (2007) to suspend the rules and address defendant's argument on its merits and to consider whether other sanctions under Rule 25(b) and Rule 34 are appropriate. Id.

II. Rule 10(c)(1) Analysis
Rule 10(c)(1) of the North Carolina Rules of Appellate Procedure provides in relevant part: "Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned."
While compliance with the Rules of Appellate Procedure is mandatory, noncompliance with the Rules does not, of itself, mandate dismissal of an appeal. Hart, 361 N.C. at 311, 644 S.E.2d at 202. Subsequent to its decision in State v. Hart, the Supreme Court clarified "the manner in which the appellate courts should address violations of the appellate rules." Dogwood Dev. and Mgmt. Co., LLC v. White Oak Transp. Co., 362 N.C. 191, 193, 657 S.E.2d 361, 362 (2008). In Dogwood, our Supreme Court recognized that even though the failure to properly preserve an issue for appeal generally precludes appellate review of that issue, in certain circumstances, "[t]he imperative to correct fundamental error . . . may necessitate appellate review of the merits despite the occurrence of default." Id. at 195-96, 657 S.E.2d at 364.
Rule 2 permits the appellate courts to excuse a party's default in both civil and criminal appeals when necessary to "prevent manifest injustice to a party" or to "expedite decision in the public interest." N.C. R. App. P.2. Rule 2, however must be invoked "cautiously," and [only in] "exceptional circumstances" [should] appellate courts . . . take this "extraordinary step."
Id. at 196, 657 S.E.2d at 364 (citations omitted).
Our Supreme Court described three commonly occurring circumstances of default under the appellate rules: "(1) waiver occurring in the trial court; (2) defects in appellate jurisdiction; and (3) violation of nonjurisdictional requirements." Id. at 194, 657 S.E.2d at 363. The Court stressed that "failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal." Id. at 198, 657 S.E.2d at 365. One such nonjurisdictional rule is the one defendant violated in the instant case, Rule 10(c)(1). Id.
"[W]hen a party fails to comply with one or more nonjurisdictional appellate rules, the court should first determine whether the noncompliance is substantial or gross under Rule 25 and 34." Id. at 201, 657 S.E.2d at 367. If the court determines the noncompliance is substantial or gross, "it should then determine which, if any, sanction under Rule 34(b) should be imposed." Id. If the court concludes "dismissal is the appropriate sanction, it may then consider whether the circumstances of the case justify invoking Rule 2 to reach the merits of the appeal." Id.
The Supreme Court determined the defendant's fourth assignment of error violated Rule 10(c)(1) because it did not provide a legal basis for the argument raised in defendant's brief and was overly broad. See Hart, 361 N.C. at 314-15, 644 S.E.2d at 204.
We next examine whether defendant's noncompliance with Rule 10(c)(1) was a substantial failure or gross violation of the appellate rules. Dogwood, 362 N.C. at 199, 657 S.E.2d at 366.
In determining whether a party's noncompliance with the appellate rules rises to the level of a substantial failure or gross violation, the court may consider, among other factors, whether and to what extent the noncompliance impairs the court's task of review and whether and to what extent review on the merits would frustrate the adversarial process.
Id. at 200, 657 S.E.2d at 366-67.
We conclude defendant's noncompliance with Rule 10(c)(1) does not constitute a substantial failure or a gross violation of the appellate rules since it does not impair our review. We also note that since the State did not raise the issue of defendant's noncompliance, a review on the merits would not frustrate the adversarial process. Accordingly, we decline to impose sanctions under Rule 34 or Rule 25. Id. at 199, 657 S.E.2d at 366; see McKinley Bldg. Corp. v. Alvis, 183 N.C. App. 500, 502, 645 S.E.2d 219, 221 (2007) and Peverall v. County of Alamance, 184 N.C. App. 88, 91, 645 S.E.2d 416, 419 (2007) (reaching the merits of appeal despite violation of appellate rules without invoking Rule 2, but imposing monetary sanctions). Axiomatically, dismissal as a sanction would also be inappropriate. See Dogwood, 362 N.C. at 200, 657 S.E.2d at 366 ("only in the most egregious instances of nonjurisdictional default will dismissal of the appeal be appropriate") (citation omitted). Consideration of whether to invoke Rule 2 is appropriate if this Court determines dismissal is warranted. Id. at 201, 657 S.E.2d at 367 ("If the court determines that the degree of a party's noncompliance with nonjurisdictional requirements warrants dismissal of the appeal under Rule 34(b), it may consider invoking Rule 2.").
In this case, we have carefully considered whether to apply Rule 2. We conclude that Rule 2 does not apply under these circumstances. Instead, as instructed by Dogwood, we perform the core function of the appellate court and review the merits of the appeal. Id. at 199, 657 S.E.2d at 366.

III. Rule 701 Analysis
Defendant argues that the trial court erred in admitting Officer Goyette's testimony over defense counsel's objection. Officer Goyette testified to the following:
Q. I'm going to show you three exhibits here. State's exhibit 17 through 19. Would you take a look at those items, if you would, please? Do you know what the object that's contained in State's exhibit number 17 is or just looking at it, do you know what it 
A. Yes, I do.
Q. And what does that appear to be?
A. This  they are razor blades with the cardboard that is around the base of it. There is [sic] also what we refer to as a stem or a crack pipe.
Defendant asserts that the testimony regarding a "crack pipe" found at defendant's residence constitutes lay opinion testimony for which no basis in personal knowledge was shown. Defendant also argues the testimony was "extremely prejudicial" because it was the only evidence of an item used to consume a controlled substance.
The standard of review for admissibility of opinion testimony is abuse of discretion. State v. Washington, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000) (citing State v. Wilson, 322 N.C. 117, 367 S.E.2d 589 (1988)). The trial court has wide discretion on such questions, and may only be reversed upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision. Id. (quotation and citation omitted). If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.
N.C. Gen. Stat. § 8C-1, Rule 701 (2007). "A lay witness must have a basis of personal knowledge for his opinion. However, a `[p]reliminary determination of personal knowledge need not be explicit but may be implied from the witness' testimony.'" State v. Givens, 95 N.C. App. 72, 79, 381 S.E.2d 869, 873 (1989) (quoting N.C. Gen. Stat. § 8C-1, Rule 602, commentary).
In State v. Hart[1], this Court held that personal knowledge acquired in the course of an officer's law enforcement career regarding typical practices of the narcotics trade can serve as the basis for lay testimony. Id. In that case, an officer's testimony that the chemicals quinine and manitol, found at the defendant's residence, had illicit uses in the heroin trade was admitted by the trial court. Id. In affirming the trial court's ruling, this Court noted that the officer's testimony was based on personal knowledge acquired during his career as a narcotics officer. Id.
The State made a similar showing of the officer's personal knowledge in the present case. During direct examination, the State inquired as to the basis of Officer Goyette's identification of the "crack pipe":
Q. Have you ever seen an object like that? A. Yes, several times.
Q. How many  how many times have you seen an object like that?
A. If I had an approximate number, several hundred. This was something . . . that is commonly used as far as drug paraphernalia and people who use drugs or sell drugs.
The officer also testified that he had seen the same type of objects during the course of his training. This experience provides an ample basis upon which the officer may have based his opinion that the object found was one that is typically used as a "crack pipe."
We hold that this testimony formed a sufficient foundation upon which the trial court could reasonably conclude that the officer's opinion was based on personal knowledge. The trial court did not abuse its discretion in overruling defendant's objection and admitting this testimony.
No error.
Judges HUNTER, Robert C. and BRYANT concur.
Report per Rule 30(e).
NOTES
[1] State v. Thomas G. Hart, 66 N.C. App. 702, 703, 311 S.E.2d 630, 631 (1984), not to be confused with the case at bar.