STATE OF NORTH CAROLINA v. KEVIN MAURICE HARGRAVE

No. COA09-85

(Filed 4 August 2009)

## 1. Evidence— lay opinion—law enforcement officers—drugs and money indicative of sales

The trial court did not err in a prosecution arising from a cocaine sale by admitting lay opinion testimony from officers that the cocaine was packaged as if for sale and that the money found was indicative of drug sales. Defendant did not object at trial on the grounds that the officers were not qualified as experts and waived his right to appeal; however, if the issue had been pre-

STATE v. HARGRAVE

[198 N.C. App. 579 (2009)]

served, there would have been no error because the testimony of the officers was based on personal experience and was helpful to the jury.

**2. Witnesses— SBI lab technician—no advanced degree—testimony admissible**

The trial court did not abuse its discretion in a cocaine prosecution by admitting testimony from the State's lab technician even though she did not have an advanced degree. The witness was better qualified than the jury to form an opinion on the particular subject and the trial court did not abuse its discretion in allowing the witness to testify.

**3. Evidence— prior offense—incident indicative of knowledge**

The trial court did not abuse its discretion by admitting evidence that defendant had been driving with a revoked license two months after the incident leading to his arrest. The evidence was admitted to show defendant's knowledge rather than his character, and was not more prejudicial than probative.

**4. Evidence— past misconduct—sufficiently similar—not too remote**

The trial court did not abuse its discretion by allowing a witness to testify to prior drug transactions with defendant where the past instances were sufficiently similar and not too remote in time, and the court gave an instruction limiting the evidence to common plan and preparation.

**5. Drugs— constructive possession of drugs—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss drug charges, based on constructive possession, where defendant was not in exclusive control of the premises but substantial evidence existed to show incriminating circumstances.

**6. Sentencing— habitual felon status—presumptive range—not excessive**

A sentence within the presumptive range was not excessive and in violation of the Eighth Amendment for a defendant who had attained habitual felon status.

Appeal by defendant from judgment entered 1 May 2008 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 10 June 2009.

STATE v. HARGRAVE

[198 N.C. App. 579 (2009)]

*Attorney General Roy Cooper, by Assistant Attorney General Sueanna P. Sumpter, for the State.*

*Hartsell & Williams, P.A., by Christy E. Wilhelm, for defendant-appellant.*

HUNTER, Robert C., Judge.

Kevin Maurice Hargrave ("defendant") appeals from judgment entered in accordance with jury verdicts finding him guilty of: (1) "giving a false name to a law enforcement officer"; (2) "selling cocaine"; (3) "driving a motor vehicle on a public highway while license has been suspended or revoked"; (4) "delivering cocaine"; (5) "possession of cocaine with the intent to sell or deliver"; and (6) having attained habitual felon status. With regards to his prior record level, defendant stipulated that he was "a level four for felony sentencing" and "a level three for misdemeanor sentencing[.]" The trial court arrested judgment on the conviction of delivering cocaine, consolidated all of the remaining convictions into one Class C felony for sentencing purposes, and sentenced defendant to an active term of 120 to 153 months imprisonment, which was in the presumptive range for a defendant with a prior record level of IV. N.C. Gen. Stat. § 15A-1340.17(c) (2007). After careful review, we find no error.

## I. Background

The State's evidence tended to show that either shortly before midnight on 30 November 2007 or shortly after midnight on 1 December 2007, Peter Paul Bruno ("Mr. Bruno") contacted defendant to buy cocaine. The two men met at approximately 12:50 a.m. in the parking lot of Bethpage Grocery, which was closed. Defendant's and Mr. Bruno's cars were the only vehicles in the lot, and the two men sat and talked prior to completing their transaction. Mr. Bruno gave defendant fifty dollars in exchange for at least two crack rocks. Deputy D.L. Logan ("Deputy Logan") spotted the two cars parked side by side and became suspicious when he saw Mr. Bruno either exit from or lean into the passenger's side of defendant's car. Upon further investigation, Deputy Logan spotted cocaine in Mr. Bruno's car. At this point, Deputy Logan called for back up, which arrived shortly thereafter and included Sergeant M.T. Grier ("Sergeant Grier") and Officer Brent Rowland ("Officer Rowland"). Mr. Bruno admitted to Deputy Logan that he was there to buy cocaine from defendant and that he had paid defendant with two twenty-dollar bills and two five-dollar bills in exchange for the cocaine.

Deputy Logan's attention then turned to defendant, who appeared nervous and whose "hands [were] shaking." Defendant then lied to Deputy Logan about his name because his license was revoked. Deputy Logan found $551 on defendant, which was all neatly bundled except for two twenty-dollar bills and two five-dollar bills. This corroborated Mr. Bruno's statement that he had just completed a drug sale with defendant. Shortly thereafter, Officer Rowland spotted a baggie containing smaller baggies of cocaine on the ground outside the front driver's side door of defendant's car. Defendant was then arrested. A subsequent chemical analysis performed by Misty Icard ("Ms. Icard") of the SBI determined that the substances found near defendant's car and those found in Mr. Bruno's car were cocaine base.

Other facts necessary to the understanding of this case are set out in the opinion below.

## II. Analysis

### A. Opinion Testimony

### Officer Witnesses

[1] First, defendant alleges that the trial court erred by allowing officers Logan, Grier, and Rowland to give lay opinion testimony that the cocaine was packaged as if for sale and that the total amount of money and the number of twenty-dollar bills found on defendant were indicative of drug sales. Specifically, defendant contends that before the officers could give this opinion testimony, they needed to be presented and qualified as experts. We disagree.

As an initial matter, we note that defendant technically waived his right to appeal this issue because he failed to object to the testimony of Sergeant Grier and Officer Rowland on this ground. "Where evidence is admitted over objection, and the same evidence . . . is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984); *see also State v. Jolly*, 332 N.C. 351, 361-62, 420 S.E.2d 661, 667-68 (1992); *State v. Oxendine*, 224 N.C. 825, 828, 32 S.E.2d 648, 649 (1944). Here, all three officers testified that the cocaine was packaged as if for sale, the total amount of cash on defendant, and the number of twenty-dollar bills on defendant were all indicative of drug sales. While defendant objected to Deputy Logan's testimony because he was not an expert, he did not object to Officer Rowland's testimony and only objected to Sergeant Grier's testimony on the ground of relevance. Therefore, technically, this issue is not properly before us.

Nevertheless, even if we assume, *arguendo*, that defendant preserved this issue for our review, as discussed *infra*, we find that the trial court did not err in admitting this testimony.

Defendant cites *State v. Fletcher* and *State v. Chisholm* in support of his contention that in order for an officer to provide opinion testimony of the type in question, he or she must first be formally qualified as an expert. *State v. Fletcher*, 92 N.C. App. 50, 56-57, 373 S.E.2d 681, 685-86 (1988); *State v. Chisholm*, 90 N.C. App. 526, 528-29, 369 S.E.2d 375, 377 (1988). While these cases provide that an officer can give expert opinion testimony as to whether a substance was marijuana and whether marijuana was packaged for private use, they do not hold that it is always necessary for officers to be formally qualified as experts in order for such testimony to be admissible.

Furthermore, in *State v. Bunch*, 104 N.C. App. 106, 408 S.E.2d 191 (1991), this Court held that lay witnesses can present opinion testimony if said testimony is relevant and based on personal knowledge:

Under N.C. Gen. Stat. § 8C-1 Rule 701 (1988), opinion testimony from a lay witness is permitted when it is "rationally based on the perception of the witness" and is helpful to the jury. As long as the lay witness has a basis of personal knowledge for his opinion, the evidence is admissible.

*Id.* at 110, 408 S.E.2d at 194 (quoting N.C. Gen. Stat. § 8C-1 Rule 701 (1988)). This Court applied this principle to the law enforcement testimony regarding drug transactions in *Bunch* and in *State v. Hart*, 66 N.C. App. 702, 311 S.E.2d 630 (1984). *See Bunch*, 104 N.C. App. at 110, 408 S.E.2d at 194 (holding that an officer can give opinion testimony as a lay witness as to the common practice in drug sales of having one person hold the money and another hold the drugs); *Hart*, 66 N.C. App. at 703, 311 S.E.2d at 631 (holding that an officer can give opinion testimony as a lay witness that chemicals found in the defendant's home were often used in the heroin trade).

Here, the testimony of each of the officers in the instant case was based on personal experience and was helpful to the jury in deciding whether the cocaine was for sale. At the time of trial, Deputy Logan had been employed for nearly four years with the sheriff's office, had completed courses in drug investigation, had passed basic law enforcement training, and had worked with the narcotics team. Sergeant Grier had nearly twenty-one years of law enforcement experience, had supervised the patrol division for the previous six years,

had worked as a vice narcotics officer for nine years, and had participated in undercover narcotics operations. Officer Rowland had six-and-a-half years of training as an officer, had completed basic law enforcement training, had completed approximately 1500 hours of in-service training, and had previously worked with vice narcotics on cases. As in *Hart* and *Bunch*, the officers' respective testimony was based on personal knowledge of drug practices. The testimony was also relevant because the fact that defendant had cocaine packaged for sale increases the likelihood that he was selling cocaine. Accordingly, we hold that the trial court did not err in admitting this testimony.

## Lab Technician's Expert Testimony

**[2]** Next, defendant asserts that the trial court erred by admitting testimony from the State's lab technician, Ms. Icard, who testified that the substances found by law enforcement contained cocaine. Specifically, defendant appears to contend that Ms. Icard was unqualified to provide expert testimony as to the chemical analysis because she does not have an advanced degree. We disagree.

When an expert witness is proffered, the trial court must conduct a three-step inquiry: "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citations omitted). Here, defendant only questions whether Ms. Icard was qualified to be an expert and appears to assert that she was not because she did not possess an advanced degree. Notably, defendant does not cite a single case to support his argument that an advanced degree is necessary to provide this type of expert testimony.

In holding that the trial court did not abuse its discretion in admitting testimony from an SBI agent, this Court declared in *Jenkins*:

[T]he general rule is that the determination of whether a witness qualifies as an expert is a factual one which is ordinarily within the exclusive province of the trial judge whose finding will not be disturbed unless there is no competent evidence to support it or an abuse of discretion. One is qualified as an expert if, through study or experience, he is better qualified than the jury to form an opinion on the particular subject.

*State v. Jenkins*, 74 N.C. App. 295, 299, 328 S.E.2d 460, 463 (1985) (citations omitted).

At the time of trial, Ms. Icard had earned a Bachelor's degree in chemistry, had completed basic law enforcement training, had completed in-house training to be a forensic drug chemist, and had testified as an expert in that field on approximately forty previous occasions. Additionally, admission of testimony as to this type of chemical analysis is routine, and this technique is well established. Because of Ms. Icard's study and training in this area, she is better qualified than the jury to form an opinion on the particular subject. Therefore, we hold that the trial court did not abuse its discretion by allowing her to testify as an expert regarding the chemical analysis she performed.

### B. Character Testimony

Next, defendant alleges the trial court erred in admitting evidence regarding his subsequent driving with a revoked license and regarding his prior drug transactions with Mr. Bruno. He asserts that this evidence did not demonstrate knowledge, common plan or intent, and was more prejudicial than probative. We disagree.

Rule 404(b) of the North Carolina Rules of Evidence provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake . . . .

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007). Rule 404(b) is a general rule of inclusion and only excludes evidence admitted for the sole purpose of showing that the defendant has the tendency to commit similar offenses to the one charged. *State v. Mack*, 188 N.C. App. 365, 376, 656 S.E.2d 1, 10 (2008). Additionally, Rule 404(b) allows admission of evidence of both subsequent and prior acts of defendant. *Id.* at 377, 656 S.E.2d at 10-11. As noted in *State v. Stevenson*, 169 N.C. App. 797, 611 S.E.2d 206 (2005), evidence admitted under Rule 404(b) is still subject to the balancing test of Rule 403:

> Where evidence of prior conduct is relevant to an issue other than the defendant's propensity to commit the charged offense, "the ultimate test for determining whether such evidence is admissible is whether the incidents are sufficiently similar and

not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403."

*Id.* at 800, 611 S.E.2d at 209 (quoting *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988)).

Furthermore, the trial court can "guard[] against the possibility of prejudice by instructing the jury to consider [the witness's] testimony only for the limited [permissible] purposes . . . ." *Id.* at 802, 611 S.E.2d at 210. The trial court's decision that evidence is admissible under Rule 404(b) will only be reversed if "it could not have resulted from a reasoned decision." *State v. Bidgood*, 144 N.C. App. 267, 272, 550 S.E.2d 198, 202, *cert. denied*, 354 N.C. 222, 554 S.E.2d 647-48 (2001).

## Subsequent Driving With a Revoked License

[3] To sustain the charge of driving with a revoked license, the State must prove that: "(1) [defendant] operated a motor vehicle, (2) on a public highway, (3) while his operator's license was suspended or revoked, and (4) had knowledge of the suspension or revocation." *State v. Woody*, 102 N.C. App. 576, 578, 402 S.E.2d 848, 850 (1991).

Here, Deputy Logan testified over objection that two months after the incident leading to defendant's arrest, he saw defendant again operating a motor vehicle on a public highway. This evidence was not admitted to show defendant's character and conformity therewith, but rather its probative value relates to the issue of knowledge, specifically that defendant knowingly drove with a revoked license.

Additionally, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. The admission of this evidence was minimally prejudicial given that other evidence showed that defendant knowingly drove with a revoked license, including Deputy Logan's testimony that when he initially confronted defendant, defendant gave him a false name because he knew that his license was revoked. Furthermore, like in Stevenson, Deputy Logan's testimony regarding the subsequent act was accompanied by a clear limiting instruction. While defendant contends that the limiting instruction was confusing because the trial court initially directed the jury to consider this evidence on the issue of intent and later changed the relevant issue to knowledge, we do not believe that a reasonable jury would have been confused by this instruction, especially when the trial court clearly rearticulated this instruction during its charge to the jury.

In sum, because the testimony pertaining to defendant's subsequent driving with a revoked license was admitted to show defendant's knowledge and was not more prejudicial than probative, we conclude that the trial court did not abuse its discretion by admitting this evidence.

### Prior Drug Transactions

[4] Next, defendant alleges that the trial court erred by allowing Mr. Bruno to testify regarding his prior drug transactions with him. Defendant contends that this evidence did not demonstrate a common plan or scheme and was more prejudicial than probative. We disagree.

The testimony of the prior transactions is admissible because it establishes a common plan or scheme. Evidence of prior crimes cannot be admitted solely because they are " 'similar' " and " 'within a time not too far removed from the crime with which the defendant [is] charged.' " *State v. Byrd*, 309 N.C. 132, 141, 305 S.E.2d 724, 731 (1983) (alteration in original), *overruled on other grounds by State v. Childress*, 321 N.C. 226, 362 S.E.2d 263 (1987). However, if the incidents are " 'sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403,' " the evidence is admissible under Rule 404(b). *Stevenson*, 169 N.C. App. at 800, 611 S.E.2d at 209 (holding that prior acts were sufficiently similar when the incidents occurred at the same place, involved the same type of drug, and the defendant fled when approached by the police in all incidents) (quoting *Boyd*, 321 N.C. at 577, 364 S.E.2d at 119).

In the instant case, the past incidents of drug sales between defendant and Mr. Bruno were sufficiently similar to the present crime. In all occurrences, Mr. Bruno called defendant prior to the sale, the parties met at an agreed upon place, defendant and Mr. Bruno sat in one of their cars and talked before concluding the sale, and defendant sold a similar amount of cocaine at a similar price. The prior incidents are not too remote in time because they all occurred within two years. Additionally, the court guarded against unfair prejudice by issuing a limiting instruction to the jury that it should consider the evidence only for the purposes of "motive, identity, a common plan or scheme, and preparation for the alleged crimes . . . ."

In sum, because the past and present incidents are sufficiently similar and not too remote in time and the trial court issued a limit-

ing instruction to guard against unfair prejudice, we conclude that the trial court did not abuse its discretion in admitting Mr. Bruno's testimony as to his prior drug transactions with defendant.

## C. Motion to Dismiss

[5] Defendant next alleges that the trial court erred by denying his motion to dismiss the drug-related charges because there was insufficient evidence to show defendant possessed narcotics. We disagree.

A motion to dismiss for insufficient evidence should be denied if there is substantial evidence of each essential element of the crime. *State v. Duncan*, 136 N.C. App. 515, 518, 524 S.E.2d 808, 810 (2000). Substantial evidence is evidence that a reasonable mind might find adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The court must consider the evidence in the light most favorable to the State, the State should receive the benefit of every reasonable inference that can be drawn from the evidence, and all inconsistencies should be resolved in the State's favor. *State v. Hinson*, 85 N.C. App. 558, 564, 355 S.E.2d 232, 236, *appeal dismissed and disc. review denied*, 320 N.C. 635, 360 S.E.2d 98 (1987).

The evidence here is sufficient to support constructive possession. Constructive possession exists when the defendant, although not in actual possession of the contraband, has the intent and capability to exercise control over it. *State v. Spencer*, 281 N.C. 121, 129, 187 S.E.2d 779, 784 (1972). When the defendant is not in exclusive control of the premises where the drugs are found, the State must prove other incriminating circumstances to get the benefit of an inference of constructive possession. *State v. McLaurin*, 320 N.C. 143, 146, 357 S.E.2d 636, 638 (1987). Some examples of incriminating circumstances are: being in close proximity to the contraband in question, *State v. Miller*, 363 N.C. 96, 99-100, —— S.E.2d ——, —— (2009); owning other items of property found near the contraband, *State v. Autry*, 101 N.C. App. 245, 252, 399 S.E.2d 357, 362 (1991); acting nervous in the presence of law enforcement, *State v. Butler*, 356 N.C. 141, 147-48, 567 S.E.2d 137, 141 (2002); and possessing a large amount of cash, *State v. Neal*, 109 N.C. App. 684, 687, 428 S.E.2d 287, 290 (1993).

Here, defendant was not in exclusive control of the premises, but substantial evidence existed to show incriminating circumstances. Like in *Miller* and *Autry*, defendant and his property (his car) were in

close proximity to the drugs. Furthermore, like in *Butler*, defendant acted nervous in the presence of law enforcement. Also, as in *Neal*, defendant possessed a large amount of cash. Additionally, the drugs were of the same type that defendant allegedly sold to Mr. Bruno and were found immediately outside the front driver's side door of defendant's car, and the sale of cocaine was corroborated by Mr. Bruno's statement that he paid for the drugs with bills in the exact denominations that were found loose in defendant's pocket. Finally, both Mr. Bruno and defendant initially attempted to leave the scene when Deputy Logan arrived, but they both stopped when ordered to do so.

In sum, we conclude that substantial evidence existed to support defendant's constructive possession of the cocaine, and the trial court did not err in denying defendant's motion to dismiss the drug-related charges.

## D. Eighth Amendment

**[6]** Finally, defendant argues that his sentence was excessive, and therefore in violation of the Eighth Amendment. We disagree.

Defendant does not cite a single North Carolina case holding that a sentence imposed under our habitual felon statute was excessive. In fact, "[t]his Court and the North Carolina Supreme Court have consistently rejected Eighth Amendment challenges to habitual felon sentences." *State v. Cummings*, 174 N.C. App. 772, 776, 622 S.E.2d 183, 185-86 (2005), *disc. review denied*, 361 N.C. 172, 641 S.E.2d 306 (2006), *cert. denied*, 550 U.S. 963, 167 L. Ed. 2d 1140 (2007); *see also State v. Clifton*, 158 N.C. App. 88, 91, 95 580 S.E.2d 40, 42, 45 (upholding a sentence of two consecutive terms of 168 to 211 months active imprisonment under the habitual felon statute where the defendant committed two counts of a non-violent Class H felony), *cert. denied*, 357 N.C. 463, 586 S.E.2d 266 (2003); *State v. Hensley*, 156 N.C. App. 634, 639, 577 S.E.2d 417, 421 (upholding a sentence of 90 to 117 months active imprisonment where the defendant had attained habitual felon status and committed a non-violent Class H felony), *disc. review denied*, 357 N.C. 167, 581 S.E.2d 64 (2003).

Here, defendant's most serious underlying conviction is a Class G felony, and he was sentenced to an active term of 120-153 months imprisonment, which was within the presumptive range. Because this Court upheld the sentence in *Clifton*, where the defendant received a longer active term for a less severe underlying felony, we conclude

TRANSPORTATION SERVS. OF N.C., INC. v. WAKE CNTY. BD. OF EDUC.

[198 N.C. App. 590 (2009)]

that the sentence in the instant case did not violate the Eighth Amendment. Therefore, we overrule this assignment of error.

No error.

Judges STEELMAN and GEER concur.