614 S.E.2d 424 (2005)
In the Matter of S.W.
No. COA04-1138.
Court of Appeals of North Carolina.
July 5, 2005.
Attorney General Roy Cooper, by Assistant Attorney General Judith Tillman, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Matthew D. Wunsche, for juvenile-appellant.
*425 TYSON, Judge.
S.W. ("juvenile") appeals from adjudication and dispositional orders finding him delinquent for possession with intent to sell or deliver a schedule VI substance. We affirm.

I. Background
On 2 December 2003, the juvenile walked by Durham County Deputy Sheriff and School Resource Officer Eric Wade Carpenter ("Deputy Carpenter") at Riverside High School. Deputy Carpenter noticed a strong odor of marijuana emanating from the juvenile, and requested the juvenile to accompany him in the hallway. Deputy Carpenter located two school administrators, Assistant Principal Travis Taylor ("Assistant Principal Taylor") and Assistant Principal Dan Davis ("Assistant Principal Davis"). Deputy Carpenter asked Assistant Principals Taylor and Davis and two unidentified students to accompany him and the juvenile into the school's weight room. There, Deputy Carpenter asked the juvenile if he "had anything on him." The juvenile responded, "no." Deputy Carpenter asked the juvenile, "do you mind if I search?" Again, the juvenile responded, "no." Deputy Carpenter conducted a search and requested the juvenile to empty his pockets. While emptying his pockets, the juvenile produced a plastic bag *426 that containing ten small plastic bags of marijuana.
On 17 December 2003, a juvenile petition was filed alleging the juvenile possessed with intent to sell or deliver a schedule VI substance in violation of N.C. Gen.Stat. § 90-95(a)(1). During the hearing, Deputy Carpenter testified for the State and the juvenile testified on his own behalf. The trial court found the juvenile to be delinquent and placed him on level I supervised probation for six months. The juvenile appeals.

II. Issues
The juvenile argues the trial court erred by: (1) denying his motion to suppress evidence obtained during an alleged unlawful search; and (2) failing to provide him with a reliable and accurate transcript of his hearing in violation of his United States and North Carolina Constitutional rights.

III. Motion to Suppress
The juvenile argues the trial court should have granted his motion to suppress evidence obtained during an alleged unlawful search. We disagree.
We note initially the juvenile properly preserved his assignment of error by objecting when the trial court denied his motion to suppress in conformity with the amended North Carolina Rules of Evidence 103. N.C. Gen.Stat. § 8C-1, Rule 103 (2003); 2003 N.C. Sess. Laws ch. 101, §§ 1-2 (effective 1 October 2003); see also State v. Rose, ___ N.C.App. ___, ___, 612 S.E.2d 336, 339 (2005) (No. COA04-353) (holding once the trial court denied the defendant's motion to suppress, he was not required to object again to preserve argument for appeal).
Our review is limited to whether the trial court's findings of fact are supported by competent evidence. State v. Tappe, 139 N.C.App. 33, 38, 533 S.E.2d 262, 264-65 (2000). If competent evidence exists in the record, the trial court's findings of fact are binding upon appeal. Id. Our review is focused upon whether those findings of fact support the trial court's conclusions of law. Id. "Nevertheless, the conclusions of law drawn from the facts found are not binding on the appellate court." State v. Pruitt, 286 N.C. 442, 454, 212 S.E.2d 92, 100 (1975) (citations omitted).

IV. Warrantless Searches
The United States Supreme Court discussed warrantless searches of students at school in New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (holding the juvenile's consent is not needed to conduct a search of his person while at school).
Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.
Id. at 341-42, 105 S.Ct. at 743, 83 L.Ed.2d at 734-35.
Applying the T.L.O. standard, this Court found it permissible to conduct a search of a student based upon a school's investigation or at the direction of a school official, in the furtherance of well established educational and safety goals. In re D.D., 146 N.C.App. 309, 318, 554 S.E.2d 346, 352 (citations omitted), appeal dismissed and disc. rev. denied, 354 N.C. 572, 558 S.E.2d 867 (2001). More recently, we held
[w]hile the holding in T.L.O. was limited to searches by school administrators and officials, our Court has recently adopted an extension of this reasonableness standard to searches conducted by law enforcement officials. We have since held that the T.L.O. standard governs searches conducted by resource officers working "`in conjunction with' school officials," where these officers are primarily responsible to the school district rather than the local police department.
In re J.F.M., 168 N.C.App. 143, 148, 607 S.E.2d 304, 307 (citing In re D.D., 146 N.C.App. at 320, 554 S.E.2d at 353-54 (citations *427 omitted)), disc. rev. denied, 359 N.C. 411, 612 S.E.2d 320 (2005).
Courts draw a clear distinction between the aforementioned categories of cases and those cases in which outside law enforcement officers search students as part of an independent investigation or in which school official[s] search students at the request or behest of the outside law enforcement officers and law enforcement agencies. Courts do not apply T.L.O. to these cases but instead require the traditional probable cause requirement to justify the search.
In re D.D., 146 N.C.App. at 318, 554 S.E.2d at 352 (internal citation omitted).
Deputy Carpenter was an employee of the Durham County Sheriff's Department. He was assigned to permanent full-time duty as the Riverside High School resource officer. See In re J.F.M., 168 N.C.App. at 148, 607 S.E.2d at 307 (holding the T.L.O. standard applies to law enforcement officers which are resource officers acting in conjunction with school officials). Deputy Carpenter assisted school officials with school discipline matters and taught law enforcement related subjects. Id. Deputy Carpenter was exclusively a school resource officer, who was present in the school hallways during school hours and was furthering the school's educational related goals when he stopped the juvenile. Id.
Deputy Carpenter was not an outside officer conducting an investigation. See id.; see also T.L.O., 469 U.S. at 341-42, 105 S.Ct. at 742-43, 83 L.Ed.2d at 734-35. Deputy Carpenter did not conduct the investigation at the behest of an outside officer who was investigating a non-school related crime. In maintaining a proper educational environment, Deputy Carpenter's employment as a resource officer mandates that he help maintain a drug free environment at the school. When the juvenile walked by Deputy Carpenter in the hall, Deputy Carpenter smelled a "strong odor" of marijuana. Deputy Carpenter had a reasonable suspicion the juvenile possessed marijuana in violation of State law and the school's rules. T.L.O., 469 U.S. at 341-42, 105 S.Ct. at 742-43, 83 L.Ed.2d at 734. Deputy Carpenter was working in conjunction with school officials and did not need to obtain the juvenile's consent to search him. In re J.F.M., 168 N.C.App. at 147, 607 S.E.2d at 307. The search of the juvenile was limited to a "pat down" and the juvenile emptying his pockets, which produced a plastic bag containing ten small plastic bags of marijuana.
After having smelled marijuana on the juvenile, Deputy Carpenter had reasonable grounds to suspect a search would turn up evidence the juvenile violated or was violating the law and or school rules. The search was reasonably related to the objective and was not excessively intrusive in light of the age and gender of the juvenile and the nature of the suspicion. T.L.O., 469 U.S. at 341-42, 105 S.Ct. at 742-43, 83 L.Ed.2d at 734-35. Evidence tended to show the juvenile consented to the search and neither his United States nor North Carolina Constitutional rights were violated. The search could have been performed without his consent. The trial court's denial of the juvenile's motion to suppress was supported by competent evidence. In re J.F.M., 168 N.C.App. at 147, 607 S.E.2d at 307; see also Tappe, 139 N.C.App. at 38, 533 S.E.2d at 264-65. This assignment of error is overruled.

V. Accurate Transcript
The juvenile contends he should be granted a new hearing due to the incomplete transcript of his adjudication. We disagree.
There is a presumption of regularity in a trial. State v. Sanders, 280 N.C. 67, 72, 185 S.E.2d 137, 140 (1971). In order to overcome this presumption, it is necessary for the defendant to include or call our attention to matters which constitute material and reversible error in the record on appeal. Id.
Before a new trial should be ordered, certainly enough ought to be alleged to show that error was probably committed. If defense counsel even suspect error in the charge, they should set out in the record what the error is. If the solicitor does not object, theirs becomes the case on appeal. If he does object, the court could then settle the dispute. The appellate court would then have something tangible upon *428 which to predicate a judgment. The material parts of a record proper do not include either the testimony of the witnesses or the charge of the court.
In re Howell, 161 N.C.App. 650, 654, 589 S.E.2d 157, 159 (2003).
This Court has considered cases in which a complete stenographic trial transcript was lacking. State v. Neely, 26 N.C.App. 707, 708, 217 S.E.2d 94, 96, cert. denied, 288 N.C. 512, 219 S.E.2d 347 (1975). In Neely, a partial transcript was prepared. Id. The direct examination of at least two witnesses, in addition to defendant's testimony, were not transcribed. Id. The defendant appealed and alleged errors which may have been committed in portions of the lost testimony. Id.
This Court emphasized the presumption of regularity in a trial and indicated specific error should be set forth by the defendant in the record. Id. We concluded that mere allegations that an error occurred is not sufficient to warrant a reversal. Id. at 709, 217 S.E.2d at 97. We stated, "absent some specific, affirmative showing by the defendant that error was committed, we will uphold the conviction because of the presumption of regularity in a trial." Id.
Here, portions of the transcript read "inaudible." These facts are unlike Neely where the transcript of entire testimonies were missing. Id. The juvenile argues these portions of the transcript that read "inaudible" are prejudicial and a new hearing should be granted. The juvenile fails to demonstrate and our review does not disclose any "specific, affirmative showing" that error was committed in the inaudible portions of the transcript to overcome the presumption of regularity at trial. Id. This assignment of error is overruled.

VI. Conclusion
The juvenile's argument that his consent for the search was not freely given is moot. The search could have been lawfully performed without his consent. Deputy Carpenter had a valid reason to search the juvenile and the search was in furtherance of the school's objective to maintain a proper and drug free educational environment.
The transcript contains the word "inaudible" omitting sections of missing testimony. This case highlights the serious need for reliable and accurate transcription equipment in our district courtrooms. A rising number of direct appeals from the district court contain transcripts where portions of the trial transcript are missing, inaudible, or of such poor quality that an accurate transcript cannot be prepared. We note our concern as the number of appeals and the need will only increase. However, the missing or inaudible sections of the transcript do not: (1) rise to the level of prejudicial error; (2) preclude the juvenile from preparing an adequate defense; or (3) prevent this Court's review for errors in the juvenile's hearing. The trial court's adjudication and dispositional orders finding the juvenile delinquent for possession with intent to sell or deliver a schedule VI substance are affirmed.
Affirmed.
Chief Judge MARTIN and Judge LEVINSON concur.