IN THE MATTER OF D.L.D., JUVENILE

No. COA09-1253

(Filed 20 April 2010)

**1. Search and Seizure— juvenile student—reasonableness standard—motion to suppress properly denied**

The trial court did not err in denying defendant's motion to suppress evidence discovered in defendant's possession as a result of a search of defendant's person. The reasonableness standard applied to the search of defendant, a juvenile student; the facts showed that the search of the juvenile was justified at its inception and was not unnecessarily intrusive in light of the juvenile's age and gender and the nature of his infraction.

**2. Confessions and Incriminating Statements— Miranda warning—unsolicited and spontaneous statement**

The trial court did not err in denying defendant's motion to suppress a statement made to a police officer while defendant, a juvenile student, was in custody but had not been read his *Miranda* rights because the statement was unsolicited and spontaneous.

**3. Evidence— lay opinion testimony of police officer—not plain error**

The trial court did not commit plain error by allowing a police officer to testify about common practices in drug sales as the offi-

**IN RE D.L.D.**

[203 N.C. App. 434 (2010)]

cer was testifying from personal experience and it was helpful to the jury in deciding whether marijuana found in defendant's possession was for sale.

**4. Drugs— possession with intent to sell or deliver—sufficient evidence—motion to dismiss properly denied**

The trial court did not err in denying defendant juvenile's motion to dismiss the charge of possession with intent to sell or deliver marijuana as there was substantial evidence to support each element of the charge.

Appeal by juvenile from order entered 24 March 2009 by Judge Brian C. Wilks in Durham County District Court. Heard in the Court of Appeals 24 February 2010.

*Attorney General Roy Cooper, by Assistant Attorney General LaToya B. Powell, for the State.*

*Hartsell & Williams, P.A., by Christy E. Wilhelm and Benjamin G. Goff, for the juvenile.*

CALABRIA, Judge.

D.L.D. ("the juvenile") appeals an order entered 24 March 2009 adjudicating him delinquent, ordering a Level 2 disposition, and placing him under the supervision of a court counselor for a period of twelve months subject to an intermittent confinement if suspended or excluded from school. We affirm.

## I. BACKGROUND

On 6 January 2009, Corporal R.A. Aleem ("Corporal Aleem") of the Durham County Sheriff's Department ("DCSD") was assigned to Hillside High School ("HHS") in Durham County, North Carolina. Corporal Aleem had worked for the DCSD for thirteen years, including six years as an undercover narcotics officer. At approximately 8:00 a.m., Corporal Aleem and HHS Assistant Principal Bob Barbour ("Barbour") reviewed surveillance video footage and when Barbour switched the viewing monitor to "live" coverage, both of them watched two male students enter a bathroom while another male student stood outside. Corporal Aleem was familiar with that bathroom because he had arrested more than a dozen suspects for controlled substances offenses. Barbour told Corporal Aleem that the scene on the monitor looked "fishy" and the two men went to "check on it."

As they approached the bathroom, one male student stood outside the men's bathroom, another male student stood outside the women's bathroom, and both of them stared at Barbour and Corporal Aleem. When Barbour and Corporal Aleem arrived at the men's bathroom, they observed the juvenile and two other male students exit the bathroom. When the juvenile saw Barbour and Corporal Aleem, he "immediately turned around and ran back into the bathroom." Corporal Aleem followed the juvenile into the bathroom and saw him put something inside his pants. Barbour escorted the other two students back into the bathroom. Corporal Aleem told Barbour he saw the juvenile put something into his pants. Barbour replied, "we need to check it." Corporal Aleem frisked the juvenile. The frisk revealed a container used to hold BB gun pellets. Inside the container were three individually wrapped bags of a green leafy material. Corporal Aleem identified the contents of the bags as marijuana. Based upon Corporal Aleem's training and experience, each bag was worth approximately $20.00.

Subsequently, Corporal Aleem restrained the juvenile in handcuffs and escorted him to a conference room in the main office at HHS. Barbour stated, "we need to go ahead and check him and make sure he doesn't have anything else." At that point, Corporal Aleem searched the juvenile and discovered $59.00 in currency in his pocket. The juvenile immediately stated, "the money was not from selling drugs," but was his mother's rent money. Barbour called the juvenile's mother, and when she arrived at HHS, she began "fussing at [the juvenile] pretty heavily" and contradicted his claim that the money was for her rent.

The juvenile was arrested and charged with possession with intent to sell or deliver marijuana. On 12 January 2009, Corporal Aleem filed a juvenile petition alleging the juvenile committed the delinquent act of possession with intent to sell or deliver marijuana. On 19 March 2009, the juvenile filed a motion to suppress all statements and evidence obtained on the ground that the statements and evidence were obtained in violation of the Fourth and Fifth Amendments to the United States Constitution, Article I, § 23, of the North Carolina Constitution, and N.C. Gen. Stat. § 7B-2101 (2008).

The adjudication was held during the 24 March 2009 Juvenile Session of Durham County District Court. During the hearing, the juvenile made an offer of proof for his motion to suppress statements and physical evidence during *voir dire* examinations of Corporal

Aleem. Following *voir dire*, the trial court denied the juvenile's motions to suppress. At the conclusion of the hearing, the trial court adjudicated the juvenile as delinquent and proceeded to disposition. Following a disposition hearing, the trial court entered a Level 2 disposition and placed the juvenile under the supervision of a juvenile court counselor for a period of twelve months under a number of conditions, including, *inter alia*, obtaining a substance abuse assessment, cooperating with all recommended treatment, and submitting to random alcohol and drug testing. The juvenile appeals.

## II. MOTION TO SUPPRESS EVIDENCE

[1] The juvenile argues that the trial court erred by denying his motion to suppress physical evidence. More specifically, he argues that the search violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. We disagree.

"Our review of a trial court's denial of a motion to suppress is limited to a determination of whether its findings are supported by competent evidence, and if so, whether the findings support the trial court's conclusions of law." *In re I.R.T.*, 184 N.C. App. 579, 584, 647 S.E.2d 129, 134 (2007) (quoting *State v. McRae*, 154 N.C. App. 624, 627-28, 573 S.E.2d 214, 217 (2002)). "The trial court's conclusions of law, however, are reviewable *de novo*." *In re J.D.B.*, —— N.C. App. ——, ——, 674 S.E.2d 795, 798 (2009) (citation omitted). "However, where there is no material conflict in the evidence presented at the suppression hearing, specific findings of fact are not required." *In re M.L.T.H.*, —— N.C. App. ——, ——, 685 S.E.2d 117, 122, *stay granted*, 363 N.C. 744, 687 S.E.2d 687 (2009) (citation omitted). " 'In that event, the necessary findings are implied from the admission of the challenged evidence.' " *Id.* at ——, 685 S.E.2d at 122 (quoting *State v. Leach*, 166 N.C. App. 711, 715, 603 S.E.2d 831, 834 (2004)).

"Ordinarily, a search—even one that may permissibly be carried out without a warrant—must be based upon 'probable cause' to believe that a violation of the law has occurred." *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S. Ct. 733, 742, 83 L. Ed. 2d 720, 734 (1985). However, "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *Id.* at 341, 105 S. Ct. at 742, 183 L. Ed. 2d at 734. North Carolina has adopted the "reasonableness" standard for student searches at school. *In re D.D.*, 146 N.C. App. 309, 315, 554 S.E.2d 346, 350-51 (2001). It has also applied this standard to searches of students conducted by law enforcement officers. *In re J.F.M. & T.J.B.*, 168

IN RE D.L.D.

[203 N.C. App. 434 (2010)]

N.C. App. 143, 147, 607 S.E.2d 304, 307 (2005). The reasonableness standard applies to "incidents where a resource officer, acting in conjunction with a school official, detains a student on school premises." *Id.* at 148, 607 S.E.2d at 307. There are three situations when the reasonableness standard applies:

> Generally, school search cases fall into three categories. First, courts apply the *T.L.O.* reasonableness standard to those cases where a school official initiates the searches on his own or law enforcement involvement is minimal. Courts characterize these cases as ones in which the police officers act in conjunction with the school official.

> More recently, the *T.L.O.* standard has also been applied to cases where a school resource officer conducts a search, based upon his own investigation or at the direction of another school official, in the furtherance of well-established educational and safety goals.

> . . .

> Courts draw a clear distinction between the aforementioned categories of cases and those cases in which outside law enforcement officers search students as part of an independent investigation or in which school official[s] search students at the request or behest of the outside law enforcement officers and law enforcement agencies. Courts do not apply *T.L.O.* to these cases but instead require the traditional probable cause requirement to justify the search.

*D.D.*, 146 N.C. App. at 318, 554 S.E.2d at 352 (internal quotations and citations omitted). Furthermore, the reasonableness standard applies in North Carolina where "a police officer works in conjunction with school officials, in varying degrees, to maintain a safe and educational environment." *Id.* at 319, 554 S.E.2d at 353 (italics, internal quotation and citation omitted). "Congress has declared that part of a school's job is educating students about the dangers of illegal drug use." *Morse v. Frederick*, 551 U.S. 393, 408, 127 S. Ct. 2618, 2628, 168 L. Ed. 2d 290, 303 (2007).

> Thousands of school boards throughout the country . . . have adopted policies aimed at effectuating this message. Those school boards know that peer pressure is perhaps the single most important factor leading schoolchildren to take drugs, and that

students are more likely to use drugs when the norms in school appear to tolerate such behavior.

*Id.* (internal quotation and citations omitted). Therefore, keeping schools drug free is vital in maintaining a safe and educational environment.

In the instant case, Corporal Aleem was assigned to HHS on 6 January 2009. He had made "numerous arrests" for controlled substances at this particular bathroom at HHS. Barbour and Corporal Aleem were conducting another investigation when they observed the monitoring cameras. Barbour directed Corporal Aleem's attention to the scene at the bathroom where two male juveniles were entering the bathroom and one was standing outside. Barbour told Corporal Aleem that the situation "looked kind of fishy," and suggested they go "check on it." When Barbour and Corporal Aleem arrived at the bathroom, they observed the juvenile exiting the bathroom. When the juvenile saw the two men, he ran back into the bathroom, followed by Barbour and Corporal Aleem. When Corporal Aleem said that he saw the juvenile put something in his pants, Barbour replied, "we need to check it." These facts show that Corporal Aleem was working in conjunction with and at the direction of Barbour to maintain a safe and educational environment at HHS, namely, keeping HHS drug-free. Therefore, the reasonableness standard under *T.L.O.* applies.

"Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the . . . action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 469 U.S. at 341, 105 S. Ct. at 742-43, 83 L. Ed. 2d at 734 (internal quotations and citations omitted).

Under ordinary circumstances, a search of a student by a teacher or other school official will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.

*Id.* at 341-42, 105 S. Ct. at 743, 83 L. Ed. 2d at 734-35 (internal quotations, citations, and footnotes omitted). "Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of

the infraction." *Id.* at 342, 105 S. Ct. at 743, 83 L. Ed. 2d at 735 (footnote omitted).

In the instant case, Barbour and Corporal Aleem observed three male students approach a bathroom at which Corporal Aleem had arrested numerous people for possession of controlled substances. Two of the students entered the bathroom while the third, who was supposed to be in class, waited outside. When Barbour and Corporal Aleem went to the bathroom to investigate, they saw one male student standing outside the men's bathroom and another male student standing outside the women's bathroom; both students just stared at Barbour and Corporal Aleem. The two men then observed three male students, including the juvenile, exiting the men's bathroom. When the juvenile saw Barbour and Corporal Aleem, he immediately turned and ran back into the bathroom. The two men followed the juvenile, and Corporal Aleem observed him placing something inside his pants. These facts show that the search of the juvenile was "justified at its inception" because there were reasonable grounds to suspect that the search would turn up evidence that the juvenile violated the law and school rules by possessing controlled substances on school property.

As for the second prong of the reasonableness standard, we have held that an officer's pat-down of a student, based on the officer's detection of a strong odor of marijuana about the student, which produced plastic bags containing marijuana, "was not excessively intrusive in light of the age and gender of the juvenile and the nature of the suspicion." *In re S.W.*, 171 N.C. App. 335, 339, 614 S.E.2d 424, 427 (2005). In the instant case, the juvenile's behavior—exiting a school bathroom where others had been arrested for drug offenses, observing a school official and a law enforcement officer, turning and running back into the bathroom, and placing an item inside his pants— provided the nature of the suspicion. Once Corporal Aleem saw the juvenile place an object inside his pants, Corporal Aleem frisked him around his waistband and discovered a container which had three bags of marijuana in it. Therefore, the search was not unnecessarily intrusive in light of the juvenile's age and gender and the nature of his infraction.

The juvenile also argues that the search in the conference room required probable cause. However, the reasonableness standard applied to the second search because Barbour and Corporal Aleem were working together to ensure a drug-free school. The search was

**IN RE D.L.D.**

[203 N.C. App. 434 (2010)]

justified at its inception because Corporal Aleem had already found controlled substances inside the juvenile's pants pocket. There is also no evidence that the search was "excessively intrusive in light of the age and gender of the juvenile and the nature of the suspicion." *S.W.*, 171 N.C. App. at 339, 614 S.E.2d at 427. The foregoing supports a finding that both searches were constitutional under the standard articulated in *T.L.O.* The juvenile's assignment of error is overruled.

## III. MOTION TO SUPPRESS STATEMENTS

[2] The juvenile argues that the trial court erred in denying his motion to suppress his statement to Corporal Aleem. We disagree.

"We begin by noting that the trial court's findings of fact after a hearing concerning the admissibility of a [statement] are conclusive and binding on this Court when supported by competent evidence." *J.D.B.*, —— N.C. App. at ——, 674 S.E.2d at 798 (citation omitted). "The trial court's conclusions of law, however, are reviewable *de novo*." *Id.* (citation omitted).

> [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the [Fifth Amendment] privilege against self-incrimination is jeopardized.
>
> . . .
>
> [The individual] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 1630, 16 L. Ed. 2d 694, 726 (1966). N.C. Gen. Stat. § 7B-2101 (2007) provides additional protections for juveniles:

(a) Any juvenile in custody must be advised prior to questioning:

(1) That the juvenile has a right to remain silent;

(2) That any statement the juvenile does make can be and may be used against the juvenile;

(3) That the juvenile has a right to have a parent, guardian, or custodian present during questioning; and

(4) That the juvenile has a right to consult with an attorney and that one will be appointed for the juvenile if the juvenile is not represented and wants representation.

*Id.*

"*Miranda* warnings protect a defendant from coercive custodial interrogation by informing the defendant of his or her rights." *State v. Al-Bayyinah*, 359 N.C. 741, 749, 616 S.E.2d 500, 507 (2005) (citation omitted). " 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L. Ed. 2d 297, 307 (1980) (footnote omitted). "The protections of *Miranda* and section 7B-2101(a) apply only to custodial interrogations by law enforcement." *In re J.D.B.*, —— N.C. ——, ——, 686 S.E.2d 135, 138 (2009). The mere fact that incriminating statements are made after a defendant is confronted with circumstances normally calling for an explanation is insufficient to render the statements incompetent. *State v. Temple*, 302 N.C. 1, 8, 273 S.E.2d 273, 278 (1981). Excited utterances by a suspect are not protected by *Miranda*. *State v. Mack*, 81 N.C. App. 578, 581-82, 345 S.E.2d 223, 225 (1986). "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda*, 384 U.S. at 478, 86 S. Ct. at 1630, 16 L. Ed. 2d at 726. "Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." *Id. See Wansley v. Slayton*, 487 F.2d 90, 99 (4th Cir. 1973) (holding that spontaneous statements made by a juvenile in custody to a law enforcement officer are admissible); *accord Commonwealth v. Clark C., a juvenile*, 59 Mass.App.Ct. 542, 545, 797 N.E.2d 5, 8 (2003); *State v. Dutchie*, 969 P.2d 422, 426 (Utah 1998); *Matter of Ojore F.*, 673 N.Y.S.2d 993, 996-97 (Fam. Ct. 1998); *State v. Valencia*, 186 Ariz. 493, 502-03, 924 P.2d 497, 506-07 (1996); *Shelton v. State*, 287 Ark. 322, 328, 699 S.W.2d 728, 731 (1985); *Washington v. State*, 456 N.E.2d 382, 384 (Ind. 1983); *In re Robert D.*, 72 Cal.App.3d 180, 184-85, 139 Cal.Rptr. 840, 843 (1977); *Interest of Thompson*, 241 N.W.2d 2, 7-8 (Iowa 1976); *State v. Stevens*, 467 S.W.2d 10, 20 (Mo. 1971); *In re Orr*, 38 Ill.2d 417, 422-24, 231 N.E.2d 424, 427-28 (1967). *See also State v. Burge*, 362 So.2d 1371, 1374 (La. 1978) (holding that when a state provides additional protections for juveniles in custody, a juvenile's spontaneous and unsolicited statements given to a law enforcement officer while in custody are admissible even if the officer did not provide the additional protections); *accord State v. Hogan*, 297 Minn. 430, 439-41, 212 N.W.2d 664, 670-71 (1973).

**IN RE D.L.D.**

[203 N.C. App. 434 (2010)]

In the instant case, after Corporal Aleem searched the juvenile in the conference room and discovered $59.00 in currency in his pocket, Corporal Aleem testified that the juvenile responded to the search by offering the statement that the money "was not from selling drugs." Corporal Aleem also testified that he was present in the conference room with Barbour and the juvenile. During *voir dire*, the juvenile's counsel questioned Corporal Aleem:

Q [counsel for the juvenile]: Corporal Aleem, so after leaving the bathroom you put [the juvenile] in the conference room, correct?

A [Corporal Aleem]: Yes, ma'am.

. . .

Q: And he was in handcuffs?

A: Yes, ma'am.

Q: And you went to the conference room with him?

A: Yes, ma'am.

Q: And [the juvenile] wasn't allowed to leave the conference room?

A: No, ma'am.

Q: And you searched him?

A: Yes, ma'am.

Q: You spoke with him?

A: Yes, ma'am.

Q: You asked him questions?

A: Questions about the substance or just basic talking questions?

Q: You asked him questions?

A: I talked to him, yes.

Q: And you told Assistant Principal Barber [sic] what was going on?

A: Well, he knew. He was standing there in the bathroom.

Q: And you knew he would come speak with [the juvenile]?

A: Did I know if he would come speak to [the juvenile]?

Q: Yes.

A: I'm sure he would talk to him about the suspensions but other than that, I mean, yes, I knew he would have a conversation with him. But other than that—

Q: But you didn't read [the juvenile] his rights?

A: No, ma'am.

Q: And his mother wasn't in the room?

A: No, ma'am.

. . .

Q: And [the juvenile] didn't wait to have her present?

A: No, ma'am.

Corporal Aleem then gave the following uncontradicted testimony:

Q [the State]: Who was conducting the conversation [in the conference room]? Was it yourself or was [it] Mr. Barbour?

A [Corporal Aleem]: Mr. Barbour was speaking.

Q: And you were just present during the conversation?

A: Yes.

. . .

Q [the trial court]: Mr. Aleem, were you asking the questions or was it Assistant [Principal] Barber [sic] who asked the questions of the juvenile?

A: Sir, Mr. Barbour asked the questions. Specifically to the money?

Q: Um-huh.

A: That was a spontaneous utterage [sic]. I never asked him anything. When I seized the money that's when he told me what the money was for. So I never asked him a question. That came spontaneously from him.

This evidence supports the trial court's finding and conclusion that the juvenile "made statements not at the questioning of the officers[.]" Therefore, the juvenile's statement was admissible because it was "unsolicited and spontaneous." *State v. Hall*, 131 N.C. App. 427,

436, 508 S.E.2d 8, 14 (1998). The trial court did not err in denying the juvenile's motion to suppress. The juvenile's assignment of error is overruled.

## IV. PLAIN ERROR

**[3]** The juvenile argues the trial court committed plain error in allowing Corporal Aleem to testify outside the area of his stated expertise. We disagree.

"[P]lain error 'only applies to jury instructions and evidentiary matters in criminal cases.' " *In re D.M.B.*, —— N.C. App. ——, ——, 676 S.E.2d 66, 68 (2009) (quoting *State v. Freeman*, 164 N.C. App. 673, 677, 596 S.E.2d 319, 322 (2004). " 'To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the [trial court] probably would have reached a different result.' " *In re T.R.B.*, 157 N.C. App. 609, 617, 582 S.E.2d 279, 284 (2003) (quoting *State v. Perkins*, 154 N.C. App. 148, 152, 571 S.E.2d 645, 648 (2002)). However, a prerequisite to our engaging in a "plain error" analysis is for us to determine whether the action complained of constitutes error at all. *State v. Spencer*, 192 N.C. App. 143, 152, 664 S.E.2d 601, 607 (2008).

In the instant case, the juvenile asks this Court to review for plain error because he did not object to Corporal Aleem's testimony at trial. *State v. Odom*, 307 N.C. 655, 656, 300 S.E.2d 375, 376 (1983). Our analysis of this issue is guided by our recent decision in *State v. Hargrave*, —— N.C. App. ——, 680 S.E.2d 254 (2009). In *Hargrave*, the defendant alleged that the trial court erred by allowing law enforcement officers to give lay opinion testimony that controlled substances found on the defendant were "packaged as if for sale and that the total amount of money and the number of twenty-dollar bills found on [the] defendant were indicative of drug sales." *Id.* at ——, 680 S.E.2d at 257. The defendant contended the officers needed to be qualified as experts before giving such testimony. *Id.* at ——, 680 S.E.2d at 257. This Court disagreed, stating, "the testimony of each of the officers in the instant case was based on personal experience and was helpful to the jury in deciding whether the cocaine was for sale." *Id.* at ——, 680 S.E.2d at 258. "[T]he officers' respective testimony was based on personal knowledge of drug practices. The testimony was also relevant because the fact that defendant had cocaine packaged for sale increases the likelihood that he was selling cocaine.

Accordingly, we hold that the trial court *did not err* in admitting this testimony." *Id.* at ——, 680 S.E.2d at 258 (emphasis added). *See*

**IN RE D.L.D.**

[203 N.C. App. 434 (2010)]

*State v. Bunch,* 104 N.C. App. 106, 110, 408 S.E.2d 191, 194 (1991) (holding that an officer can give opinion testimony as a lay witness as to the common practice in drug sales of having one person hold the money and another hold the drugs); *State v. Hart,* 66 N.C. App. 702, 703, 311 S.E.2d 630, 631 (1984) (holding that an officer can give opinion testimony as a lay witness that chemicals found in the defendant's home were often used in the heroin trade).

In the instant case, Corporal Aleem worked for the DCSD for thirteen years, including six years in undercover narcotics investigations. He had also been trained in the recognition of marijuana, attended an advanced narcotics investigator's course which included controlled substance recognition, and participated in recurrent training including marijuana spotters courses. Corporal Aleem also testified as follows:

Q [the State]: Officer, in the course of your experience in narcotics is it traditional for a person selling drugs to have in his possession both money and drugs?

A [Corporal Aleem]: Yes.

Q: Is it also traditional in your experience for a person to have a low amount of inventory and a high amount of money or *vice versa,* a high amount of inventory and a low amount of money?

A: Depends on how business is. I mean, if he hasn't started selling yet he's going to have more inventory than he does money. If he's selling pretty good that means he's has [sic] more money than he does inventory.

Based on our reasoning in *Hargrave,* the trial court did not err in admitting Corporal Aleem's testimony because it was based on personal experience and was helpful to the trial court in deciding whether the marijuana was for sale. The testimony was also relevant because the juvenile possessed $59.00 and three small bags of marijuana worth $20.00 each. Both facts increased the likelihood that he was selling marijuana. *Hargrave,* —— N.C. App. at ——, 680 S.E.2d at 258. The juvenile's assignment of error is overruled.

## V. MOTION TO DISMISS

[4] The juvenile argues that the trial court erred in entering judgment and denying the juvenile's motion to dismiss where there was insufficient evidence to support the entry of the order. We disagree.

**IN RE D.L.D.**

[203 N.C. App. 434 (2010)]

"We review a trial court's denial of a motion to dismiss *de novo*." *In re S.M.S.*, —— N.C. App. ——, ——, 675 S.E.2d 44, 45 (2009) (citation omitted). "Where the juvenile moves to dismiss, the trial court must determine 'whether there is substantial evidence (1) of each essential element of the offense charged, . . . and (2) of [juvenile's] being the perpetrator of such offense.'" *In re Heil*, 145 N.C. App. 24, 28, 550 S.E.2d 815, 819 (2001) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "'Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion.'" *In re S.R.S.*, 180 N.C. App. 151, 156, 636 S.E.2d 277, 281 (2006) (quoting *State v. Wood*, 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005)). "The evidence must be considered in the light most favorable to the State, and the State is entitled to receive every reasonable inference of fact that may be drawn from the evidence." *In re Eller*, 331 N.C. 714, 717, 417 S.E.2d 479, 481 (1992) (citing *State v. Easterling*, 300 N.C. 594, 268 S.E.2d 800 (1980)).

> The offense of possession with intent to sell or deliver has three elements: (1) possession of a substance; (2) the substance must be a controlled substance; and (3) there must be intent to sell or distribute the controlled substance. While intent may be shown by direct evidence, it is often proven by circumstantial evidence from which it may be inferred. Although quantity of the controlled substance alone may suffice to support the inference of an intent to transfer, sell, or deliver, it must be a substantial amount.

*I.R.T.*, 184 N.C. App. at 588, 647 S.E.2d at 136-37 (quoting *State v. Nettles*, 170 N.C. App. 100, 105, 612 S.E.2d 172, 175-76 (2005)) (internal quotation and citations omitted). "'Based on North Carolina case law, the intent to sell or distribute may be inferred from (1) the packaging, labeling, and storage of the controlled substance, (2) the defendant's activities, (3) the quantity found, and (4) the presence of cash or drug paraphernalia.'" *Id.* at 588, 647 S.E.2d at 137 (quoting *Nettles*, 170 N.C. App. at 106, 612 S.E.2d at 176). "Even where the amount of drugs involved is small, the surrounding circumstances may allow the jury to find an intent to distribute." *State v. James*, 81 N.C. App. 91, 94, 344 S.E.2d 77, 80 (1986). *See State v. Williams*, 71 N.C. App. 136, 139-40, 321 S.E.2d 561, 564 (1984) (less than one ounce of marijuana packaged in a number of small containers was sufficient to raise a presumption that the marijuana was possessed for sale and delivery).

In the instant case, when the juvenile observed Barbour and Corporal Aleem outside the bathroom, the juvenile ran back inside

and placed an object inside his pants. The object was a container. Inside the container were three individually wrapped bags of marijuana valued at approximately $20.00 each. The juvenile also possessed $59.00 in currency. When Corporal Aleem discovered the currency, the juvenile spontaneously stated that the money did not come "from selling drugs." When viewed in the light most favorable to the State, there was substantial evidence that the juvenile possessed a controlled substance, *i.e.*, marijuana, with the intent to sell or distribute it. The juvenile's assignment of error is overruled.

## VI. CONCLUSION

The trial court's adjudication and disposition orders are affirmed.

Affirmed.

Judges HUNTER, Robert C. and HUNTER, JR., Robert N. concur.