Filed 4/10/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 76

State of North Dakota, Plaintiff and Appellee

v.

Christian Antonio Alaniz, Jr., Defendant and Appellant

No. 20110259

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Joel D. Medd, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

David Thomas Jones, P.O. Box 5607, Grand Forks, N.D. 58206-5607, for plaintiff and appellee.

Daniel James Borgen, 1110 College Drive, Suite 211, Bismarck, N.D. 58501, for defendant and appellant.

State v. Alaniz

No. 20110259

VandeWalle, Chief Justice.

[¶1] Christian Antonio Alaniz, Jr., appealed from an order deferring imposition of sentence entered after he conditionally pled guilty to possession of a controlled substance and possession of drug paraphernalia.  Alaniz argues the district court erred in denying his motion to suppress evidence because there was not probable cause to justify the search of his person and the exception to the probable cause requirement for warrantless searches by school officials did not apply.  We affirm.

I

[¶2] Troy Vanyo is a police officer with the Grand Forks Police Department and is assigned to work as a school resource officer at a high school in Grand Forks.  Vanyo testified he works full time at the high school during the school year and the school district pays $42,000 per year to the police department to help fund three school resource officers. 

[¶3] On February 17, 2011, Vanyo had received information about possible drug use involving students in an area approximately a block and a half from the high school.  Vanyo testified that he and Ryan Rupert, a school security guard, decided to pay extra attention to the area.  Rupert patrolled the area on foot and saw two students acting suspiciously.  One of the students was later identified as Alaniz.  Rupert notified Vanyo about his observations and Vanyo drove in his patrol car to the area where Rupert saw the students.  Vanyo saw the two students Rupert had contacted him about and Rupert advised Vanyo the students were attempting to evade Rupert.  The students walked to a town square area and Vanyo followed in his patrol car.  Vanyo testified the students were seated when they saw him, stood up, and quickly walked toward a stage area in the town square.  Vanyo told Rupert of the students’ location and Rupert said he would investigate further.  Vanyo returned to the high school and Rupert advised Vanyo that he was behind the stage area and he smelled something “funny.”  

[¶4] Vanyo waited for the students to return to the high school, and he notified the associate principal when the first student returned.  Later, Vanyo observed Alaniz waiting to talk to the attendance secretary and he informed the school principal that Alaniz was the other individual he observed in the town square and suspected was involved in drug activity.  The principal took Alaniz into a detention room and Vanyo followed them.  Vanyo testified the principal questioned Alaniz, Vanyo testified he told Alaniz something like “if you have anything on you, you need to lay it on the table now,” and Alaniz emptied his pockets, which contained a glass pipe and synthetic marijuana.  Vanyo arrested Alaniz and transported him to the Grand Forks County Correctional Center.  Vanyo testified the questioning and arrest lasted approximately five minutes.

[¶5] Alaniz was charged with possession of a controlled substance, a class C felony, and possession of drug paraphernalia, a class C felony.  Alaniz moved to suppress the evidence, arguing the police failed to advise him of his rights under 
Miranda v. Arizona
, 384 U.S. 436 (1966), there was not probable cause justifying the search of his person, and the exception to the probable cause requirement for searches by school officials did not apply.  The district court denied Vanyo’s motion, ruling the reasonableness standard for searches by school officials applied and the search was reasonable.  Alaniz entered a conditional guilty plea under N.D.R.Crim.P. 11(a)(2) and reserved his right to appeal the court’s denial of his suppression motion.

II

[¶6] Alaniz argues the district court erred as a matter of law in finding that the school official exception to the probable cause requirement for warrantless searches applies because the investigation occurred off of school property by a police officer in his squad car, Vanyo was acting as a city police officer and not a school official, and the search was conducted at the behest of the police investigation.  Alaniz contends there was not probable cause justifying the search and it violated his Fourth Amendment right to be free from unreasonable searches and seizures.

[¶7] We will affirm a district court’s decision to deny a motion to suppress unless, after resolving conflicting evidence in favor of affirmance, there is insufficient competent evidence fairly capable of supporting the court’s findings or the decision is contrary to the manifest weight of the evidence.  
City of Dickinson v. Hewson
, 2011 ND 187, ¶ 6, 803 N.W.2d 814.  Whether a district court’s findings meet a legal standard is a question of law, which is fully reviewable on appeal.  
Id.

[¶8] Under the Fourth Amendment of the United States Constitution, an individual has a right to be free from unreasonable searches and seizures.  In 
New Jersey v. T.L.O.
, 469 U.S. 325 (1985), the United States Supreme Court held the Fourth Amendment applies to searches conducted by school authorities but also held probable cause was not necessary to support the search and a lower level of reasonableness was required to justify searches by school officials.  The Court said:

[T]he accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law.  Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.  Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the . . . action was justified at its inception, second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place.

Id.
 at 341 (quotations and citations omitted).  Generally, a search by a teacher or other school official is justified at its inception “when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.”  
Id.
 at 342.  In 
Safford Unified School Dist. No. 1 v. Redding
, 129 S. Ct. 2633, 2639 (2009), the Court further elaborated on what it meant by reasonable grounds:

In 
T.L.O.
, we recognized that the school setting “requires some modification of the level of suspicion of illicit activity needed to justify a search,” and held that for searches by school officials “a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause.”  We have thus applied a standard of reasonable suspicion to determine the legality of a school administrator’s search of a student, and have held that a school search “will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not exceedingly intrusive in light of the age and sex of the student and the nature of the infraction.”

. . . 

Perhaps the best that can be said generally about the required knowledge component of probable cause for a law enforcement officer’s evidence search is that it raise a “fair probability” or a “substantial chance” of discovering evidence of criminal activity.  The lesser standard for school searches could as readily be described as a moderate chance of finding evidence of wrongdoing.

 

(Citations omitted).

[¶9] However, the holding in 
T.L.O.
 was limited to searches conducted by school authorities acting alone and on their own authority.  The Court stated, “[t]his case does not present the question of the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies, and we express no opinion on that question.”  
T.L.O.
, 469 U.S. at 342 n.7.

[¶10] Other courts have addressed this issue and have held there are three categories of school searches based on the amount of police involvement: (1) when school officials initiate the search or police involvement is minimal, the reasonableness standard applies; (2) when the search involves school resource officers acting on their own initiative or at the direction of other school officials to further educationally related goals, the reasonableness standard applies; and (3) when “outside” police officers initiate the search, warrant and probable cause requirements apply.  
See, e.g.
, 
T.S. v. State
, 863 N.E.2d 362, 367-68 (Ind. Ct. App. 2007); 
Myers v. State
, 839 N.E.2d 1154, 1160 (Ind. 2005); 
State v. Burdette
, 225 P.3d 736, 740 (Kan. Ct. App. 2010); 
In re D.L.D.
, 694 S.E.2d 395, 400 (N.C. Ct. App. 2010); 
State v. J.M.
, 255 P.3d 828, 832 (Wash. Ct. App. 2011).  

[¶11] In determining how much police involvement occurred and which standard applies, courts have considered various factors, including whether the officer was in uniform, whether the officer has an office on the school campus, how much time the officer is at the school each day, whether the officer is employed by the school system or an independent law enforcement agency, what the officer’s duties are at the school, who initiated the investigation, who conducted the search, whether other school officials were involved, and the officer’s purpose in conducting the search.  
See
 
T.S.
, at 369-71; 
Burdette
, at 740; 
R.D.S. v. State
, 245 S.W.3d 356, 368 (Tenn. 2008).  We agree with the rationale used by these courts to determine which standard should apply to school searches.

[¶12] In this case, the district court denied Alaniz’s motion to suppress, ruling Vanyo was not an outside officer, he was more like a school official, the school-official exception to the probable cause requirement for warrantless searches applied, and therefore Vanyo only had to have reasonable suspicion Alaniz was violating the law or a school rule before the search.  The court ruled the search was justified at its inception based on the students’ initial suspicious behavior, the students’ attempt to evade Rupert, the students’ actions in quickly walking away from Rupert, and Rupert’s smell of a “funny” odor.  The court also ruled the search was reasonably related in scope to the circumstances justifying interference in the first place.  The court concluded there was reasonable suspicion to support the search.  

[¶13] The district court did not explicitly decide whether there was a search in this case, but the State did not argue the events in this case did not constitute a search.  For purposes of this opinion we will treat the actions as a search.
  
Cases involving school searches are fact specific, and under the circumstances of this case, the relevant facts support application of the reasonableness standard.  Vanyo did not initiate the investigation; rather, he was contacted by Rupert after Rupert saw two students acting suspiciously.  Vanyo is a school resource officer, the school district pays the police department to fund the resource officer program, and Vanyo is assigned to the school full time during the school year.  One of the goals of the resource officer program is to provide a clean, safe, and secure learning environment by providing school security and preventing criminal acts on the school campus.  After Vanyo returned to the school, he saw Alaniz standing in line to talk to the attendance secretary, he identified Alaniz as one of the students he observed acting suspiciously, and he informed the principal about what he saw and let the principal decide how to handle the situation.  The principal removed Alaniz from the line and questioned him in the detention room.  Vanyo was not involved in questioning Alaniz, except for telling Alaniz 
he should put anything he had on his person on the table.
  

[¶14] In other cases with similar facts, courts have held the reasonableness standard applies.  In 
D.L.D.
, 694 S.E.2d at 398, an officer assigned to the high school was reviewing surveillance video footage with the assistant principal when they saw two students enter a bathroom while another student stood outside the entrance.  The officer had made “numerous arrests” for controlled substances in that bathroom.  
Id.
 at 400.  The principal told the officer they should investigate, the students were exiting the bathroom when they approached, but one of the students went back into the bathroom when he saw the officer and principal.  
Id.
 at 398.  The officer followed the student into the bathroom and saw him put something in his pants.  
Id.
  The officer notified the principal about what he saw and the principal told the officer they needed to check it out.  
Id.
  The officer frisked the student and found marijuana inside a container.  
Id.
 at 398-99.  The court held the reasonableness standard applied because the facts show the officer was working in conjunction with and at the direction of the principal to maintain a safe and educational environment at the school.  
Id.
 at 401.  

[¶15] Vanyo, like the officer in 
D.L.D.
, was a school resource officer, who was working with other school officials to investigate violations of school rules and the law to maintain a safe and educational environment.  Vanyo also advised the principal of the situation and let the principal decide what to do.  The facts in this case are similar to those in 
D.L.D.
, and support application of the reasonableness standard.

[¶16] However, Alaniz argues this case is similar to 
F.P. v. State
, 528 So.2d 1253, 1255 (Fla. Dist. Ct. App. 1988), where the court held the school exception did not apply because the search was carried out at the behest of police.  In 
F.P.
, a school resource officer was advised by a police investigator that there was evidence F.P. stole a vehicle and had the keys in his possession.  
Id.
 at 1254.  The resource officer saw F.P. in school and took him to her office, where F.P. eventually gave her the keys to the vehicle.  
Id.
  The facts in this case are different from the facts in 
F.P.
  The resource officer in 
F.P.
 was acting at the request of the outside police officer and other school officials were not involved.  Here, Vanyo was acting based on information from school officials, there was no involvement from outside police officers, and the school principal questioned Alaniz and decided how to handle the situation.  Under the facts and circumstances of this case, we conclude the reasonableness standard applies.

[¶17] To determine whether a search was reasonable, we must consider whether the search was justified at its inception and whether the search was reasonably related in scope to the circumstances that justified the interference in the first place.  
T.L.O.
, 469 U.S. at 341.  A search is justified at its inception when there is a moderate chance the search will turn up evidence the student has violated or is violating the law or school rules.  
Safford
, 129 S. Ct. at 2639.  The search is permissible in scope when the “measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.”  
T.L.O.
, at 342.

[¶18] Here, Rupert observed two students in an area where drug activity had been reported and the two students acted suspiciously, attempted to evade him, and walked to another location.  Vanyo also observed the students and the students walked away when they saw him in his patrol vehicle.  Rupert went to the location where Vanyo had observed the students and Rupert smelled a “funny” odor.  The students returned to the school shortly thereafter.  Based on these facts, the search was justified at its inception because there was a moderate chance the search would turn up evidence Alaniz was violating the law or school rules by possessing controlled substances.  

[¶19] The search also was not excessively intrusive in light of Alaniz’s age, gender, and nature of the suspicion.  Alaniz was eighteen years old.  He was not physically searched.  Alaniz emptied his pockets after Vanyo told him he should put anything he had on the table.
  We conclude the search was reasonable and the district court did not err in denying Alaniz’s motion to suppress.

III

[¶20] We affirm.  

[¶21] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner